## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

MARK W. DOBRONSKI,

*Plaintiff*,

v.

ROCKET MORTGAGE, LLC

*Defendant.*

Case No. 4:25-cv-12798-FKB-KGA

Hon. F. Kay Behm
U.S. District Judge

Hon. Kimberly G. Altman
U.S. Magistrate Judge

ORAL ARGUMENT REQUESTED

## ROCKET MORTGAGE, LLC'S MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Mark W. Dobronski ("Dobronski") alleges in the First Amended Complaint ("FAC") that Rocket Mortgage, LLC ("Rocket Mortgage") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*., its implementing regulations; the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.111(a)(5); and the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.125(2)(a) by making purported calls and a text message to his Voice Over Internet Protocol ("VoIP") telephone number when the number was purportedly registered on the National Do-Not-Call ("DNC") Registry. Rocket Mortgage moves to dismiss Dobronski's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The grounds for this Motion are set forth in the accompanying

1

Memorandum of Law. Without prejudice to this Motion, on November 10, 2025,

Rocket Mortgage moved to compel arbitration pursuant to the Federal Arbitration

Act ("FAA"), 9 U.S.C. § 1 *et seq* (ECF No. 10).

In compliance with Local Rule 7.1(a), on December 15, 2025, the undersigned

counsel certifies that counsel for Rocket Mortgage emailed Dobronski seeking his

availability to meet and confer by telephone. Dobronski responded that due to his

vacation schedule, he was unavailable. On December 17, 2025, counsel for Rocket

Mortgage then sent an email to Dobronski, explaining the nature of the relief sought

by this Motion, the grounds for relief, and seeking concurrence in the relief. On

December 19, 2025, counsel for Rocket Mortgage sent another email to Dobronski

asking for his concurrence. As of the date of this filing, Dobronski has not advised

as to whether he denies concurrence.

Respectfully submitted,

/s/ *W. Kyle Tayman*

W. Kyle Tayman
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
KTayman@goodwinlaw.com

Jeffrey M. Thomson (P72202)
MORGANROTH &
MORGANROTH PLLC
344 North Old Woodard Avenue,
Suite 200

2

Birmingham, MI 48009
Tel.: +1 248 864 4000
Fax: +1 248 864 4001
JThomson@morganrothlaw.com


*Counsel for Rocket Mortgage, LLC*

Dated: December 22, 2025

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

MARK W. DOBRONSKI,

      *Plaintiff*,

v.

ROCKET MORTGAGE, LLC

      *Defendant*.

Case No. 4:25-cv-12798-FKB-KGA

Hon. F. Kay Behm
U.S. District Judge

Hon. Kimberly G. Altman
U.S. Magistrate Judge

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF
## ROCKET MORTGAGE, LLC'S MOTION TO DISMISS PLAINTIFF'S
## <u>FIRST AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

STANDARD OF REVIEW ................................................................................5

ARGUMENT .....................................................................................................6

    A.    DOBRONSKI FAILS TO PLAUSIBLY ALLEGE THAT ROCKET
        MORTGAGE USED AN ATDS OR ARTIFICIAL OR PRERECORDED
        VOICE (COUNTS I & II)............................................................................6

    B.    DOBRONSKI FAILS TO ADEQUATELY PLEAD THAT ROCKET
        MORTGAGE PLACED AN ARTIFICIAL OR PRERECORDED MESSAGE
        WITHOUT HIS CONSENT. (COUNT III AND XIV)...................................10

    C.    DOBRONSKI FAILS TO ADEQUATELY ALLEGE ROCKET MORTGAGE
        DISCONNECTED THE CHALLENGED CALLS (COUNT IV)......................13

    D.    DOBRONSKI'S ABANDONED CALL CLAIMS (COUNTS V, VI, AND VII)
        FAIL BECAUSE DOBRONSKI DOES NOT HAVE A PRIVATE RIGHT OF
        ACTION UNDER 47 C.F.R. § 64.1200(A). ..............................................14

    E.    DOBRONSKI'S DNC CLAIMS (COUNTS VIII, IX, X, XI, AND XIII)
        FAIL TO STATE A CLAIM. ....................................................................17

        i.    Dobronski Does Not Plead the Receipt of More Than One
            "Telephone Solicitation."............................................................17

        ii.    VoIP Telephone Subscribers Are Not "Residential Telephone
            Subscribers" Under Section 227 of the TCPA or Section
            445.111(a)(5) of the MHSSA. ....................................................19

        iii.    Dobronski Does Not Adequately Plead that His Telephone
            Number is Only for "Residential" Purposes. .............................22

    F.    DOBRONSKI DOES NOT PLEAD THAT ROCKET MORTGAGE LACKED
        THE REQUISITE PROCEDURE FOR MAINTAINING AN INTERNAL DO-
        NOT-CALL LIST (COUNTS IX, X, AND XI)...........................................26

i

G.  COUNT XII FAILS BECAUSE THERE IS NO PRIVATE RIGHT OF
    ACTION ................................................................................................29

CONCLUSION ......................................................................................................32

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aikens v. Synchrony Fin. d/b/a Synchrony Bank*,
  No. 15-10058, 2015 WL 5818911 (E.D. Mich. July 31, 2015)............................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................5

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199
  WV/KY/OH*,
  708 F.3d 737 (6th Cir. 2013) .........................................................................15

*Barry v. Ally Fin., Inc.*,
  No. 20-12378, 2021 WL 2936636 (E.D. Mich. July 13, 2021)........................7, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................5, 18

*Benzion v. Vivint, Inc.*,
  No. 12-61826-CIV-ZLOCH/HUNT, 2014 WL 11531368 (S.D.
  Fla. Jan. 17, 2014)...........................................................................27, 28, 29

*Bougopoulos v. Altria Grp., Inc.*,
  954 F. Supp. 2d 54 (D.N.H. 2013)...................................................................10

*Breda v. Cellco P'ship*,
  934 F.3d 1 (1st Cir. 2019)...............................................................................19

*Burdge v. Ass'n Health Care Mgmt.*,
  No. 1:10–CV–00100, 2011 WL 379159 (S.D. Ohio Feb. 2, 2011)....................27

*Callier v. GreenSky, Inc.*,
   No. EP-20-CV-00304-KC, 2021 WL 2688622 .................................................22

*Charvat v. DFS Servs., LLC*,
  781 F. Supp. 2d 588 (S.D. Ohio 2011) ............................................................27

*Charvat v. NMP, LLC*,
  656 F.3d 440 (6th Cir. 2011) .........................................................................15

*Chennette v. Porch.com, Inc.*,
  50 F.4th 1217 (9th Cir. 2022) ............................................................................21

*Cross v. State Farm Mut. Auto. Ins. Co.*,
  No. 1:20-cv-01047, 2022 WL 193016 (W.D. Ark. Jan. 20, 2022) .....................8

*Dahdah v. Rocket Mortg., LLC*,
  No. 22-11863, 2024 WL 4299564 (E.D. Mich. Sept. 26, 2024),
  *appeal docketed*, No. 24-1910 (6th Cir. Oct. 18, 2024) ...................................16

*Dobronski v. Ideal Concepts, Inc.*,
  No. 2:24-cv-12807 (E.D. Mich. Oct. 24, 2024), ECF No. 1 .............................24

*Dobronski v. Medguard Alert, Inc.*,
  No. 2:24-cv-12940 (E.D. Mich. Jan. 7, 2025), ECF No. 10..............................24

*Dobronski v. Selectquote Ins. Servs.*, ("*Selectquote 1*"),
  462 F. Supp. 3d 784 (E.D. Mich. 2020) ............................................................30

*Dobronski v. Selectquote Ins. Servs.*, ("*Selectquote 2*"),
  773 F. Supp. 3d 373 (E.D. Mich. Mar. 25, 2025)..............................................30

*Dobronski v. SunPath Ltd.*,
  No. 19-13094, 2020 WL 8840311 (E.D. Mich. July 27, 2020)..........................30

*Dobronski v. Total Ins. Brokers, LLC*,
  No. 21-10035, 2021 WL 4452218 (E.D. Mich. Sept. 29, 2021) .......................29

*Eggleston v. Reward Zone USA LLC*,
  No. 2:20-cv-01027-SVW-KS, 2022 WL 886094 (C.D. Cal. Jan.
  28, 2022) ............................................................................................................12

*Est. of Barney v. PNC Bank, Nat'l Ass'n*,
  714 F.3d 920 (6th Cir. 2013) ...............................................................................5

*Facebook, Inc. v. Duguid*,
  592 U.S. 395 (2021).............................................................................................6

*Fluker v. Ally Fin. Inc.*,
  No. 22-cv-12536, 2023 WL 8881154 (E.D. Mich. Dec. 21, 2023)..............7, 8, 9

*Glauser v. GroupMe, Inc.*,
  No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) .....................12

iv

*Hamilton v. Voxeo Corp.*,
  Nos. 3:07-cv-404, 3:08-cv-279, 2009 WL 1868542 (S.D. Ohio
  June 25, 2009) ....................................................................................... 28

*Hicks v. Alarm.com Inc.*,
  No. 1:20-cv-532, 2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ......................... 23

*Holmes v. Back Drs., Ltd.*,
  695 F. Supp. 2d 843 (S.D. Ill. 2010) ..................................................... 15

*Kamppi v. Ghee*,
  208 F.3d 213, No. 99-3459, 2000 WL 303018 (6th Cir. Mar. 14,
  2000) ................................................................................................ 5

*Katz v. CrossCountry Mortg., LLC*,
  No. 1:22-CV-00925, 2022 WL 16950481 (N.D. Ohio Nov. 15,
  2022) ............................................................................................... 18

*Laccinole v. Gulf Coast Collection Bureau, Inc.*,
  No. 22-223-JJM-LDA, 2023 WL 157719 (D.R.I. Jan. 11, 2023) ...................... 8

*Lee v. Loandepot.com, LLC*,
  No. 14-CV-01084-EFM, 2016 WL 4382786 (D. Kan. Aug. 17,
  2016) ............................................................................................... 23

*Less v. Quest Diagnostics Inc.*,
  515 F. Supp. 3d 715 (N.D. Ohio 2021) ................................................... 15

*Leyse v. Bank of Am. Nat'l Ass'n*,
  804 F.3d 316 (3d Cir. 2015) ................................................................ 24

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) ....................................................................... 22, 25

*Mantha v. QuoteWizard.com*,
  No. 19-12235-LTS, 2022 WL 325722 (D. Mass. Feb. 3, 2022) ................. 24, 25

*Massarello v. Power Home Remodeling Grp., LLC*,
  No. 24-cv-12480, 2025 WL 2463153 (E.D. Mich. Aug. 27, 2025) ............. 20, 25

*McDonough v. Anoka Cnty.*,
  799 F.3d 931 (8th Cir. 2015) .......................................................... 11, 14

*McEwen v. Nat'l Rifle Ass'n of Am.,*
    No. 2:20-cv-00153-LEW, 2021 WL 1414273 (D. Me. Apr. 14,
    2021) ......................................................................................................6

*McEwen v. Nat'l Rifle Ass'n of Am.,*
    No. 2:20-cv-00153-LEW, 2021 WL 5999274 (D. Me. Dec. 20,
    2021) ......................................................................................................7

*Meyer v. Cap. All. Grp.,*
    No. 15-CV-2405-WVG, 2017 WL 5138316 (S.D. Cal. Nov. 6,
    2017) ................................................................................................30, 31

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of
    1991,* 18 F.C.C. Rcd. 14014 (2003).......................................20, 25, 31

*Samataro v. Keller Williams Realty, Inc.,*
    Nos. 1:21-CV-76-RP, 1:20-CV-835-RP, 1:18-CV-775-RP, 2021
    WL 4927422 (W.D. Tex. Sept. 27, 2021) .............................................8

*Shelton v. Fast Advance Funding, LLC,*
    378 F. Supp. 3d 356 (E.D. Pa. 2019).............................................21, 22

*Shelton v. Target Advance LLC,*
    No. 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) ...............25

*Simmons v. Charter Commc'ns, Inc.,*
    222 F. Supp. 3d 121 (D. Conn. 2016)...........................................27, 28

*Stoops v. Wells Fargo Bank, N.A.,*
    197 F. Supp. 3d 782 (W.D. Pa. 2016).................................................24

*Tackett v. M & G Polymers, USA, LLC,*
    561 F.3d 478 (6th Cir. 2009) ................................................................5

*Trim v. Reward Zone USA LLC,*
    76 F.4th 1157 (9th Cir. 2023) .............................................................12

*Worsham v. Travel Options, Inc.,*
    No. JKB-14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016),
    *aff'd,* 678 F. App'x 165 (4th Cir. 2017) .............................................30

*Ybarra v. Dish Network, L.L.C.,*
    807 F.3d 635 (5th Cir. 2015) ................................................................9

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017)......................................................................30

**Statutes & Regulations**

47 C.F.R. § 64.1200(a)(1)(iii) ...........................................................6

47 C.F.R. § 64.1200(a)(2) .................................................................6

47 C.F.R. § 64.1200(a)(3) ...............................................................10

47 C.F.R. § 64.1200(a)(6) ...............................................................13

47 CFR 64.1200(a)(7) ...............................................................16, 17

47 C.F.R. § 64.1200(c)(2) ...............................................................23

47 C.F.R. § 64.1200(d) ............................................................*passim*

47 C.F.R. § 64.1601(e)............................................................*passim*

47 C.F.R § 64.1601(e)(1)...........................................................29, 31

47 C.F.R. § 64.1200(f)(15)(i)...........................................................17

47 U.S.C. § 227(b)(1).........................................................................6

47 U.S.C. § 227(c)(5).......................................................................17

47 U.S.C. § 227(d) ...........................................................................15

47 U.S.C. § 227(e)(3) .......................................................................30

M.C.L. § 445.111(l) ........................................................................26

M.C.L. § 445.111a(5).......................................................................23

M.C.L. § 484.125(2) ..................................................................11, 12

**Other Authorities**

*10 Common VoIP Problems and How to Fix Them*, Telewire (July 17,
  2025), https://www.telewire-inc.com/hosted-voice/voip-problems-
  and-solutions/....................................................................................14

137 Cong. Rec. 30821 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings) ....................................................................................................21

Alex Doan, *Common VoIP Problems and How to Fix Them*, Nextiva (Dec. 27, 2023), https://www.nextiva.com/blog/voip-problems.html ........................................................................................................14

Tyler Webb, *7 Common VoIP Problems: Causes & How to Troubleshoot Them,* GetVoIP (Oct. 3, 2023), https://getvoip.com/blog/voip-troubleshooting/ .................................................14

## ISSUES PRESENTED

(1)    Whether Counts I and II of the FAC—which requires Dobronski to plead and prove that Rocket Mortgage used an ATDS or an artificial or prerecorded voice to place the challenged calls—fail to state a claim and should be dismissed because the FAC is devoid of any allegations for Calls 1-21 to support that any random or sequential number generation occurred as required by the Supreme Court?

(2)    Whether Count II of the FAC fails to state a claim because it is entirely derivative of Count I?

(3)    Whether Count III and Count XIV of the FAC—which alleges that Rocket Mortgage used an artificial or prerecorded voice in Call 21 to deliver an advertisement—fails to state a claim under the TCPA and the MTCCCA and should be dismissed because Dobronski fails to adequately plead that Rocket Mortgage did not have consent to place this call, and because the text message in Call 22 is not a "recorded message" under the statute?

(4)    Whether Count IV of the FAC—which requires Dobronski plead and prove Rocket Mortgage disconnected the challenged calls prior to at least 15 seconds or four rings—fails to state a claim and should be dismissed because Dobronski fails to adequately plead any facts to suggest that Rocket Mortgage, rather than Dobronski's own VoIP service, was the cause of the disconnection?

(5)    Whether Counts V, VI, and VII of the FAC—which allege violations of the TCPA's abandoned call provisions under 47 C.F.R. § 64.1200(a)(7) and its subsections—fail to state a claim and should be dismissed because (i) there is no private right of action under 47 C.F.R. 64.1200(a), and (ii) if a private right of action exists, the FAC is devoid of factual allegations sufficient to state a claim against Rocket Mortgage for violation of this regulation?

(6)    Whether Counts VIII-XI and XIII of the FAC—which require plaintiff show he is a "residential telephone subscriber"—fail to state a claim and should be dismissed because (a) Dobronski cannot allege that he received more than one telephone solicitation, (b) Voice Over Internet Protocol ("VoIP") telephone users are not "residential telephone subscribers" under the TCPA and the MHSSA, and (c) Dobronski's allegations support that

his VoIP telephone number is not used for "residential" purposes?

(7)     Whether Counts IX, X, and XI of the FAC—which allege violations of 47 C.F.R. § 64.1200(d)(1), (d)(3), and (d)(4)—fail to state a claim and should be dismissed because Dobronski does not adequately plead that Rocket Mortgage lacked the requisite procedure for maintaining an internal do-not-call list.

(8)     Whether Count XII of the FAC—which alleges violation of 47 C.F.R. § 64.1601(e)—fails to state a claim and should be dismissed because (i) there is no private right of action to enforce this regulation, and (ii) if a private right of action exists, the FAC is devoid of plausible factual allegations sufficient to state a claim against Rocket Mortgage for violation of this regulation?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

2. *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021).

3. *Massarello v. Power Home Remodeling Grp., LLC*, No. 24-cv-12480, 2025 WL 2463153 (E.D. Mich. Aug. 27, 2025).

4. *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737 (6th Cir. 2013).

5. *Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011).

6. *Fluker v. Ally Fin. Inc.*, No. 22-cv-12536, 2023 WL 8881154 (E.D. Mich. Dec. 21, 2023).

7. *Katz v. CrossCountry Mortg., LLC*, No. 1:22-CV-00925, 2022 WL 16950481 (N.D. Ohio Nov. 15, 2022).

8. *Dobronski v. Total Ins. Brokers, LLC*, No. 21-10035, 2021 WL 4452218 (E.D. Mich. Sept. 29, 2021).

9. *Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 WL 2936636 (E.D. Mich. July 13, 2021).

10. *Aikens v. Synchrony Fin. d/b/a Synchrony Bank*, No. 15-10058, 2015 WL 5818911 (E.D. Mich. July 31, 2015).

11. *Hamilton v. Voxeo Corp.*, Nos. 3:07-cv-404, 3:08-cv-279, 2009 WL 1868542 (S.D. Ohio June 25, 2009).

## INTRODUCTION

Plaintiff Dobronski's lawsuit against Rocket Mortgage—one of five dozen he has filed as a serial TCPA litigant—alleges violations of the TCPA, the Michigan Home Solicitation Sales Act, and the Michigan Telephone Companies as Common Carriers Act. Dobronski alleges that Rocket Mortgage placed repeated, unsolicited calls, and one text message, to his VoIP telephone number when the number was purportedly registered on the DNC Registry. The FAC rests entirely on conclusory allegations that fall woefully short of pleading the plausible factual allegations required to survive dismissal, and seeks to extend the TCPA in ways never authorized by Congress. Because each of the fourteen counts in the FAC fails to state a viable claim, it should be dismissed in its entirety.[1]

Among other defects in the FAC, Dobronski's automatic telephone dialing system ("ATDS") claims (Counts I and II) fail because the FAC makes no allegations whatsoever to support that any random or sequential number generation occurred as required by Supreme Court precedent.

Dobronski's "artificial or prerecorded voice" TCPA claim, and the similar MTCCCA claim, (Count III and XIV) fail because he does not sufficiently plead

---

[1] On November 10, 2025, Rocket Mortgage filed a Motion to Compel Arbitration ("MTCA") (ECF No. 10). Rocket Mortgage files this Motion without prejudice to its MTCA. Because it is jurisdictional, the MTCA should be resolved in advance of this Motion.

that Rocket Mortgage placed Call 21 without consent, and because the text message in Call 22 does not constitute a "recorded message."

Dobronski also does not plead any facts to suggest that Rocket Mortgage— rather than his own VoIP service or internet connection—"terminated" Calls 1-20 to state a viable premature hang-up claim (Count IV).

Dobronski's abandoned call claims (Counts V, VI, and VII) fail because he does not adequately plead that Rocket Mortgage abandons more than three percent of all its telemarketing calls as required by the regulation.

Dobronski's allegations to support his DNC claims (Counts VIII-XI and XIII) fail to show that he is a "residential telephone subscriber."

Counts IX-XI also fail because Dobronski does not adequately plead that Rocket Mortgage lacked the requisite procedure for maintaining an internal DNC list.

Finally, there is no private right of action for the caller identification provision of the TCPA (Count XII).

The FAC should be dismissed in its entirety, with prejudice.

## BACKGROUND[2]

Dobronski filed his original complaint on September 5, 2025. ECF No. 1. On November 10, 2025, Rocket Mortgage filed a Motion to Dismiss demonstrating that (1) Dobronski failed to plead sufficient facts to satisfy his ATDS claims, (2) Dobronski was not a "residential telephone subscriber" under Section 227 of the TCPA or Section 445.111(a)(5) of the MHSSA, and (3) there is no private right of action to enforce 47 C.F.R. § 64.1601(e), and even if there were, Dobronski failed to plead factual allegations to state a claim for violation. Two weeks later, on November 24, 2025, Dobronski filed the FAC adding eight new counts.

The FAC alleges that Rocket Mortgage placed 21 calls and one text message to his VoIP telephone number between August 11 and September 29, 2025 without his prior consent. *See* FAC, ECF No. 14, PageID.163-165, 168, ¶¶ 64, 73, 99.[3]

Dobronski alleges that his telephone number 734-***-*212 is provided through a VoIP service, and has been listed on the DNC Registry since June 29, 2003. FAC, ECF No. 14, PageID.155, ¶ 30. He alleges that he uses this telephone number "primarily for personal, family, and household communications" and "not for business purposes." FAC, ECF No. 14, PageID.156, ¶ 31. Dobronski further

---

[2] Rocket Mortgage treats Dobronski's factual allegations as true for purposes of this Motion only.

[3] Notably, this is not Dobronski's only TCPA lawsuit in which he makes nearly-identical claims regarding various telephone numbers purportedly belonging to him. In the past year alone, Dobronski has filed at least 20 TCPA lawsuits in this District.

alleges that Calls 1-20 each rang once and "immediately terminated before [Dobronski] could answer the telephone," but does not plead any additional information about calls, his attempts to answer them, or the VoIP settings to support that it was Rocket Mortgage and not his VOIP settings that terminated the calls. FAC, ECF No. 14, PageID.164, ¶ 66. For Calls 1-20, Dobronski alleges that he subsequently called the number displayed on the caller ID and was informed that Rocket Mortgage's records indicated that they "had been attempting to contact [Dobronski] to discuss his interest in mortgage refinancing," and alleges he requested to be placed on Rocket Mortgage's do-not-call list. FAC, ECF No. 14, PageID.164, ¶¶ 67-72.

Dobronski then alleges he received Call 21 on September 29, 2025, after the filing of the original complaint, and alleges that upon answering, he heard a prerecorded message before being connected to a live agent named George Rasmus. During the call, Rasmus identified himself as an executive banker at Rocket Mortgage and explained that Rocket Mortgage had received his information as a result of an online inquiry in the name of "Test Testing." FAC, ECF No. 14, PageID.165, ¶¶ 75-79. Lastly, Dobronski alleges that during Call 21, Dobronski received an SMS text message from telephone number 313-545-0494 containing George's contact information addressed to "Testq." FAC, ECF No. 14, PageID.168,

¶¶ 99-101. Based on these allegations, Dobronski seeks to hold Rocket Mortgage liable under the TCPA, the MHSSA, and the MTCCCA.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must present "more than labels and conclusions" in his complaint to establish his entitlement to relief; his "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient to overcome a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Est. of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 924 (6th Cir. 2013) (cleaned up). A plaintiff must offer more than the "bare assertion of legal conclusions" to state a viable claim for relief. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009); *see also Kamppi v. Ghee*, 208 F.3d 213 (table), No. 99-3459, 2000 WL 303018, at *1 (6th Cir. Mar. 14, 2000) ("Thus, the less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations.").

## ARGUMENT

**A.** **DOBRONSKI FAILS TO PLAUSIBLY ALLEGE THAT ROCKET MORTGAGE USED AN ATDS OR ARTIFICIAL OR PRERECORDED VOICE (COUNTS I & II).**

In Counts I and II, Dobronski pleads duplicative claims to seek relief under the automated dialing provisions of the TCPA's implementing regulations. 47 C.F.R. § 64.1200(a)(1)(iii); 47 C.F.R. § 64.1200(a)(2). An essential element of both claims is that the challenged calls (a) were made using an "automatic telephone dialing system" or (b) were made using an "artificial or prerecorded voice." 47 U.S.C. § 227(b)(1); 47 C.F.R. § 64.1200(a)(1)(iii).

As to the ATDS element, the Supreme Court in *Facebook v. Duguid* held that a necessary feature of an ATDS "is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). Post-*Duguid*, courts have uniformly held that the key to alleging a plausible ATDS claim is that the system generated the telephone number called either randomly or sequentially—not merely that the defendant used some form of automated system. *McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-cv-00153-LEW, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021) ("After the *Duguid* opinion, the ATDS portion of the claim requires an allegation that InfoCision used a random or sequential number generator to place a call to Plaintiff's

cellphone, not merely a claim that its dialing system has that capability."); *Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 WL 2936636, at *3-4 (E.D. Mich. July 13, 2021).

Thus, for an ATDS claim to survive dismissal, "plaintiffs [must] include at least some allegations to support the inference that the defendant used a random or sequential number generator" to generate and then dial the telephone number. *McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-cv-00153-LEW, 2021 WL 5999274, at *4 (D. Me. Dec. 20, 2021); *Fluker v. Ally Fin. Inc.*, No. 22-cv-12536, 2023 WL 8881154, at *3 (E.D. Mich. Dec. 21, 2023) (quoting *Wallack v. Mercantile Adjustments Bureau, Inc*., No. 14-10387, 2014 WL 1515852, at *2 (E.D. Mich. Apr. 18, 2014) (finding a plaintiff must make a "plausible showing of 'circumstances that would support the inference that' the offending phone calls 'were placed with a[n] [ATDS] or an artificial or prerecorded voice.'"), *aff'd*, No. 24-1023, 2025 WL 1827747 (6th Cir. July 2, 2025). While the federal pleading rules do not require plaintiffs to "know the specific functionality of a system used by a defendant before discovery," plaintiffs must nevertheless "allege sufficient facts to nudge [their] claim across the line from conceivable to plausible." *Fluker*, 2023 WL 8881154, at *2. Dobronski's conclusory allegations regarding the challenged calls do not plausibly allege that Rocket Mortgage used an ATDS.

First, Dobronski pleads that the calls were targeted, which is inconsistent with random or sequential number generation. Dobronski alleges that Rocket Mortgage

stated that they had been "attempting to contact [Dobronski] to discuss his interest in mortgage refinancing." FAC, ECF No. 14, PageID.164, ¶ 71. That is "tantamount to an acknowledgement that [Rocket Mortgage's] phone calls targeted him specifically"—the antithesis of random or sequential dialing. *See Fluker*, 2023 WL 8881154, at *2. "And when calls are directed to particular individuals, the plausible inference is that an ATDS was not in fact used." *See id.* at *2; *see also Cross v. State Farm Mut. Auto. Ins. Co.*, No. 1:20-cv-01047, 2022 WL 193016, at *8 (W.D. Ark. Jan. 20, 2022) (dismissing ATDS claim because challenged text was targeted to specific individual); *Samataro v. Keller Williams Realty, Inc.*, Nos. 1:21-CV-76-RP, 1:20-CV-835-RP, 1:18-CV-775-RP, 2021 WL 4927422, at *4 (W.D. Tex. Sept. 27, 2021) (dismissing TCPA "claim with prejudice because it is based on calls made to specific individuals . . . as opposed to generated randomly by an autodialer"). Dobronski's conclusory allegation that Rocket Mortgage randomly called his number multiple times also does him no better. *See Samataro*, 2021 WL 4927422, at *4. That allegation does not plausibly support the use of an ATDS because an act cannot be "both randomly generated and specifically targeted at the same time." *Laccinole v. Gulf Coast Collection Bureau, Inc.*, No. 22-223-JJM-LDA, 2023 WL 157719, at *3 (D.R.I. Jan. 11, 2023).

Second, Dobronski also pleads, without any factual support, that Rocket Mortgage "inputs lists of names and telephone numbers of consumers into their

[ATDS]." FAC, ECF No. 14, PageID.162, ¶ 61. He then asserts that the ATDS will use a "random or sequential generator" to select numbers from this list to contact customers. FAC, ECF No. 14, PageID.162-163, ¶¶ 61, 63. But it is well-settled that the selection of phone numbers from a list is not reflective of the use of a random or sequential number generator. *See, e.g., Barry*, 2021 WL 2936636, at *6 (rejecting ATDS claim, where "Plaintiff pleads that she, and purported class members, were called in connection with specific accounts held by Defendant for a specific purpose, and not through randomly or sequentially generated numbers"); *Aikens v. Synchrony Fin. d/b/a Synchrony Bank*, No. 15-10058, 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015), *report and recommendation adopted*, 2015 WL 5818860 (E.D. Mich. Aug. 31, 2015) ("Court may not accept an assertion that an ATDS was used simply because Plaintiff states as much").

As to the prerecorded voice element, Dobronski does not plausibly allege that Calls 1-20 contained an artificial or prerecorded message. Because Dobronski pleads that he was unable to answer Calls 1-20, "it is impossible for him to provide a sufficient factual basis to plausibly establish that [Rocket Mortgage] used 'an artificial or prerecorded voice' when making those calls." *See Fluker*, 2023 WL 8881154, at *3. One cannot hear what one does not answer. *Id*. And because he was unable to answer Calls 1-20, he cannot allege the use of an artificial or prerecorded voice for those calls. *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 641 (5th

Cir. 2015) (holding that "unless the recipient answers, an artificial or prerecorded voice is never used" and that "making a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA").

As a final matter, Counts I and II are defectively pled because they are duplicative and fail for the same reasons. *See Bougopoulos v. Altria Grp., Inc.*, 954 F. Supp. 2d 54, 62-63 (D.N.H. 2013) ("[B]ecause [Plaintiff] bases his claim in Count II on [the same unlawful activity as his other counts], his claim in Count II is redundant and should be dismissed to avoid confusing repetition of the same claims."). *Compare* Count I (alleging use of "an automatic telephone dialing system or an artificial or prerecorded voice . . ." FAC, ECF No. 14, PageID.169, ¶ 103), *with* Count II (alleging use of "an automatic telephone dialing system or an artificial or prerecorded voice" FAC, ECF No. 14, PageID.169, ¶ 106) Counts I and II are redundant and, for that reason, Count II should be dismissed.

## B. DOBRONSKI FAILS TO ADEQUATELY PLEAD THAT ROCKET MORTGAGE PLACED AN ARTIFICIAL OR PRERECORDED MESSAGE WITHOUT HIS CONSENT. (COUNT III AND XIV)

Telemarketing calls using an artificial or prerecorded voice only violate the TCPA if they were made without the "prior written express consent" of the called party. 47 C.F.R. § 64.1200(a)(3). Similarly, the MTCCCA prohibits delivering a recorded message to a subscriber at their residence for the purpose of "presenting commercial advertising" except when the subscriber has "knowingly and voluntarily

requested, consented, permitted, or authorized the contact from the caller" or when the subscriber has "knowingly and voluntarily provided his or her telephone number to the caller." M.C.L. § 484.125(2)(a)(i), (ii). [4]

The FAC pleads that Rocket Mortgage obtained Dobronski's information, including his phone number, through an online inquiry and that, as a result of that inquiry, Rocket Mortgage placed Call 21 to Dobronski's VoIP phone number to assist him with his "home purchase." FAC, ECF No. 14, PageID.165, ¶¶ 75, 79. Dobronski's allegations more plausibly support that through this "online inquiry," Dobronski, as a serial TCPA plaintiff (or someone acting on his behalf), provided his telephone number to Rocket Mortgage for the purpose of receiving mortgage financing information, than that Rocket Mortgage placed the calls without such consent. *Id.* Accordingly, as to Call 21, Count III and Count XIV fail to state a claim. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678) (alterations in original) ("Courts should consider whether there are lawful, 'obvious alternative explanation[s]' for the alleged conduct, because '[w]here a complaint pleads facts that are merely consistent with a defendant's

---

[4] The FAC pleads that Rocket Mortgage violated the MTCCCA and "*specifically* M.C.L. § 484.125(2)(a)." FAC, ECF No. 14, PageID.176, ¶ 145 (emphasis added). Because Section 484.125(2)(a) is the only referenced provision in the FAC, this is the only provision that Rocket Mortgage will address.

liability, it stops short of the line between possibility and plausibility of entitlement to relief.'").

Dobronski also asserts that Call 22 violates the MTCCCA. In doing so, Dobronski appears to make the illogical assertion that a text message is a "recorded message." FAC, ECF No. 14, PageID.168, ¶¶ 99-101. A text message is inaudible text that is read and not an audible voice. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1158 (9th Cir. 2023) (noting that a text message is not a prerecorded voice message because the congressional intent was for "voice to include only an audible sound, and not a more symbolic definition such as an instrument or medium of expression."); *Eggleston v. Reward Zone USA LLC*, No. 2:20-cv-01027-SVW-KS, 2022 WL 886094, at *6 (C.D. Cal. Jan. 28, 2022) (Wilson, J.) ("text messages do not constitute a 'voice' under the TCPA."), *aff'd sub nom. Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023); *Glauser v. GroupMe, Inc*., No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015) (rejecting theory that a text message constituted artificial or prerecorded voice when plaintiff "present[ed] no authority for the argument"). The MTCCCA prohibits "recorded message[s]" for commercial advertising, which means voice messages, not text messages. M.C.L. § 484.125(2). A text message cannot constitute a "recorded message" under the MTCCCA, so Count XIV fails to state a claim.

### C.    DOBRONSKI FAILS TO ADEQUATELY ALLEGE ROCKET MORTGAGE DISCONNECTED THE CHALLENGED CALLS (COUNT IV).

Dobronski contends, without support, that each of Calls 1-20 violated 47 C.F.R. § 64.1200(a)(6)[5] because "[Rocket Mortgage] or [Rocket Mortgage's] agent disconnected an unanswered telemarketing call prior to at least 15 seconds or four (4) rings." FAC, ECF No. 14, PageID.170, ¶ 112. But other than a mere recitation of the regulation, Dobronski pleads no facts to support this conclusion. *See generally id*. Dobronski pleads only that each of Calls 1-20 "rang once and immediately terminated before [Dobronski] could answer the telephone." FAC, ECF No. 14, PageID.164, ¶ 66. The FAC fails to plead facts to support that it was Rocket Mortgage who did not allow the calls to ring more than once.

As the FAC alleges, Rocket Mortgage informed Dobronski that the Company had been trying to contact him to discuss his interest in mortgage refinancing. FAC, ECF No. 14, PageID.164, ¶ 71. This purpose is frustrated if the call disconnects before the caller can speak with the customer. Accordingly, Dobronski's threadbare factual allegations that the call only rang once does not support a reasonable inference that the disconnected calls were caused by Rocket Mortgage. Rather, an

---

[5] The FCC is currently undertaking a notice and comment period to eliminate the rule set forth in 47 C.F.R. § 64.1200(a)(6). FCC Fact Sheet, Call Branding FNPRM, Improving Verification and Presentation of Caller Identification Information, Further Notice of Proposed Rulemaking and Public Notice – CG Docket Nos. 17-59, 02-278, 25-307, and WC Docket No. 17-97 (Oct. 7, 2025).

equally—if not more—plausible explanation is that the disconnected calls were caused by Dobronski's phone settings or use of a "broadband Internet connection instead of a conventional telephone line."[6] *See* FAC, ECF No. 14, PageID.156, ¶ 33; *McDonough*, 799 F.3d at 946 (quoting *Iqbal*, 556 U.S. at 678) ("Courts should consider whether there are lawful, 'obvious alternative explanation[s]' for the alleged conduct.'").

Because Dobronski does not offer any facts supporting his conclusory allegation that Rocket Mortgage disconnected each of the challenged calls after only one ring, Count IV should be dismissed.

### D.   Dobronski's Abandoned Call Claims (Counts V, VI, and VII) Fail Because Dobronski Does Not Have a Private Right of Action Under 47 C.F.R. § 64.1200(a).

Counts V, VI, and VII purport to state a claim for violations of the TCPA's "abandoned call" regulation set forth in Section 64.1200(a)(7). Dobronski's claims should be dismissed for multiple, independent reasons.

---

[6] Dropped calls are known to be a "common VoIP problem" typically due to a lack of sufficient bandwidth of the VoIP subscriber. Alex Doan, *Common VoIP Problems and How to Fix Them*, Nextiva (Dec. 27, 2023), https://www.nextiva.com/blog/voip-problems.html; *see also 10 Common VoIP Problems and How to Fix Them*, Telewire (July 17, 2025), https://www.telewire-inc.com/hosted-voice/voip-problems-and-solutions/ ("Insufficient bandwidth leads to poor call quality and dropped calls."); Tyler Webb, *7 Common VoIP Problems: Causes & How to Troubleshoot Them*, GetVoIP (Oct. 3, 2023), https://getvoip.com/blog/voip-troubleshooting/ (With "cloud-based phone systems . . . you may still run into occasional issues like audio delay, echoing, or dropped calls.").

First, there is no private right of action for these claims. The regulation at issue in Counts V-VIII—47 C.F.R. § 64.1200(a)(7)—was promulgated by the FCC pursuant to Section 227(d) of the TCPA. Section 227(d) of the TCPA provides "[t]echnical and procedural standards" for certain calls and instructs the FCC to "prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone" including the requirement to "state clearly the identity of the business . . . ." 47 U.S.C. § 227(d)(3). Section 227(d) of the TCPA, however, does not contain a private right of action for consumers to enforce its implementing regulations, such as 47 C.F.R. § 64.1200(a)(7). *See, e.g., Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011) ("Technical and procedural standards specific to automated calls are included in § 227(d) . . . do not provide a private right of action or a statutory-damages provision"); *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 745 (6th Cir. 2013) (holding that there is no private right of action authorized under Section 227(d)). Accordingly, Dobronski has no right to enforce that implementing regulation. *Less v. Quest Diagnostics Inc.*, 515 F. Supp. 3d 715, 718 (N.D. Ohio 2021) (holding that there is no private right of action to enforce 47 C.F.R. § 64.1200(a)); *see also Holmes v. Back Drs., Ltd.*, 695 F. Supp. 2d 843, 854-55 (S.D. Ill. 2010) (dismissing claim under 47 U.S.C. § 227(d) and noting that "the

15

vast majority of courts" have held that there is no private right of action under subsection(d)).

Second, even if there was a private right of action, Dobronski fails to plead the requisite factual allegations necessary to establish a violation. Under Section 64.1200(a)(7), no entity may "[a]bandon more than three percent of all telemarketing calls that are answered live by a person. . ." 47 C.F.R. § 64.1200(a)(7). The regulation further states that "[a] call is 'abandoned' if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting." *Id.* The regulation then continues that "[w]henever a live sales representative is not available to speak with the person answering the [abandoned] call, within two (2) seconds after the called person's greeting, the telemarketing or the seller must provide . . . [a] prerecorded identification and opt-out message that [discloses] the call was for 'telemarketing purposes' and states the name of the business, entity, or individual on whose behalf the call was placed . . . ." *Id.*

Dobronski's call abandonment claims fail because he alleges only calls as to him, and no information at all from which one could "extrapolate an abandonment rate in excess of 3%" to state a viable claim. *See Dahdah v. Rocket Mortg., LLC*, No. 22-11863, 2024 WL 4299564, at *8 (E.D. Mich. Sept. 26, 2024), *appeal docketed*, No. 24-1910 (6th Cir. Oct. 18, 2024). This defect alone is fatal. Furthermore, Dobronski asserts that 21 of the 21 calls he received were "abandoned." FAC, ECF

No. 14, PageID.171, ¶ 117. On the contrary, the FAC alleges that Calls 1-20 rang once and "immediately terminated before [Dobronski] could answer the telephone." FAC, ECF No. 14, PageID.164, ¶ 66. Because Dobronski did not answer any of these calls, he could not have provided a "greeting," and because Dobronski did not provide a "completed greeting," Calls 1-20 are not "abandoned" calls as defined by Section 64.1200(a)(7). *See id.;* 47 CFR 64.1200(a)(7). Dobronski has not sufficiently alleged facts to permit the Court to infer that Rocket Mortgage abandoned any calls, let alone more than three percent of its telemarketing calls and, as such, Counts V-VII fail and should be dismissed.

### E.    DOBRONSKI'S DNC CLAIMS (COUNTS VIII, IX, X, XI, AND XIII) FAIL TO STATE A CLAIM.

#### i.    Dobronski Does Not Plead the Receipt of More Than One "Telephone Solicitation."

Counts VIII and XIII should be dismissed because Dobronski does not allege that he received more than one "telephone solicitation" as is required by 47 U.S.C. § 227(c)(5) to state a claim for a violation of Section 64.1200(c) and the MHSSA. A "telephone solicitation" is defined as "a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . " but does not include calls placed "to any person with that person's prior express invitation or permission." 47 C.F.R. § 64.1200(f)(15)(i).

As for Calls 1-20, Dobronski pleads no factual allegations about these calls.

*See* FAC, ECF No. 14, PageID.163-164, ¶¶ 64-66. There are, for example, no factual allegations about what was said or the purpose of Calls 1-20 to permit this Court to conclude that it is plausible that any of them were "telephone solicitations." *See Twombly*, 550 U.S. at 570; *Katz v. CrossCountry Mortg., LLC*, No. 1:22-CV-00925, 2022 WL 16950481, at *6 (N.D. Ohio Nov. 15, 2022) ("Without factual allegations as to the content of these calls, Plaintiff's FAC fails to properly allege that such calls were solicitations under the TCPA."). At most, he alleges that when he called Rocket Mortgage after Call 20, he was informed that the Company was attempting to contact him about his expressed "interest in mortgage refinancing." FAC, ECF No. 14, PageID.164, ¶ 71. Nothing about that allegation supports that Calls 1-20 were telephone solicitations without his prior permission or invitation; it instead supports the opposite and that Rocket Mortgage was attempting to provide him with the information he requested regarding his "interest" in a refinance.

As to Call 21, the FAC alleges that a Rocket Mortgage team member was calling in response to an "online inquiry" that was made to assist Dobronski with his "home purchase." FAC, ECF No. 14, PageID.165, ¶¶ 75, 79. As discussed above, *supra* Section B, these allegations support that Rocket Mortgage had prior permission from Dobronski (or someone acting on his behalf) to provide him with the information requested in the online inquiry.

Lastly, Call 22 is also not a telephone solicitation under Section

18

64.1200(f)(15). The FAC states that Call 22 was a text message and that its only content included the Rocket Mortgage team member's contact information. Dobronski does not plead any facts showing the content of this text message encouraged Dobronski to "purchase or rent[]" or "invest[]" in any goods or services. FAC, ECF No. 14, PageID.168, ¶ 101.

For these reasons, Counts VIII and XIII should be dismissed.

### ii. VoIP Telephone Subscribers Are Not "Residential Telephone Subscribers" Under Section 227 of the TCPA or Section 445.111(a)(5) of the MHSSA.

VoIP calls can be routed to any location wherever the subscriber is located using broadband internet and are not tied to the home.[7] *See* FAC, ECF No. 14, PageID.156, ¶ 33. Under a plain reading of the statutory language, VoIP telephone subscribers are not "residential telephone subscribers" under either the TCPA or the MHSSA.

In 2003, the Federal Communications Commission ("FCC") asserted that the TCPA's protections for residential telephone subscribers should be expanded and interpreted to presume certain subscribers of cellular telephones are

---

[7] "[W]ireless 'hot spots' in locations such as airports, parks, and cafes allow you to connect to the Internet and may enable you to use VoIP service wirelessly." *Voice Over Internet Protocol (VoIP)*, FCC, https://www.fcc.gov/general/voice-over-internet-protocol-voip; *Breda v. Cellco P'ship*, 934 F.3d 1, 6 (1st Cir. 2019) (VoIP technology "can be used with either a telephone (mobile or land-line) or a PC [personal computer] as the user terminal.").

"residential" and allow them to register their wireless telephone numbers on the DNC Registry. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14037–38 (2003) ("the national database should allow for the registration of wireless telephone numbers"). The FCC noted that not all cellular phone subscribers are necessarily "residential":

> As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

*Id.* at 14039. Recently, however, this Court acknowledged that following the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo* "the Court should no longer defer to the FCC's interpretation of the relevant [TCPA] language . . . [and] must engage in an independent statutory review." *See Massarello v. Power Home Remodeling Grp., LLC*, No. 24-cv-12480, 2025 WL 2463153, at *2 (E.D. Mich. Aug. 27, 2025). Therefore, the determination of whether "residential telephone subscribers" should include cellular—or by extension, VoIP telephone subscribers—that are in no manner tied to a residential home, requires an independent review by this Court and not automatic deference to the FCC's interpretation.

This Court should reject the FCC's interpretation of the TCPA because it is contrary to the plain text of the statute, and it is inconsistent with the purpose of the TCPA's directive with respect to the DNC Registry.

The FCC's expansion of "residential telephone subscriber" in the TCPA to include subscribers of cellular phones or VoIP is contrary to the statute's plain text. Indeed, "[a]lthough mobile phones were available in the 1990s when the TCPA was enacted, it was understood that a 'residential telephone' referred to a land line at a residence." *Chennette v. Porch.com, Inc*., 50 F.4th 1217, 1233 (9th Cir. 2022) (Ikuta, J., dissenting). "The plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere." *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019), *aff'd*, 805 F. App'x 156 (3d Cir. 2020). There is no ambiguity in this language. Congress intended to protect privacy in one's home and prevent residential landline's from being seized and flooded with unwanted calls. *See* 137 Cong. Rec. 30821 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings) ("[c]omputerized calls . . . wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."). In contrast, VoIP was not invented at the time the TCPA was enacted in 1991 and does not operate in the same manner as a landline. The privacy concerns for landlines are simply not implicated by VoIP

21

technology, which can be used in public and outside of the home—hardly the sanctuary of residential privacy Congress sought to protect. *See Fast Advance Funding, LLC*, 378 F. Supp. 3d at 362 n.7. At bottom, Congress did not intend for the DNC protections to extend to nascent technologies of portable telephones, let alone technologies that did not exist.

The Court should reject the FCC's interpretation of the TCPA and follow the language of the statute at the time it was enacted and dismiss Counts VIII-XI and XIII. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("That is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'"); *see also Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021) (dismissing section 64.1200(d)(1) claim "because this regulation applies to 'residential telephone subscribers' and does not apply to cell phones").

### iii. Dobronski Does Not Adequately Plead that His Telephone Number is Only for "Residential" Purposes.

Even setting aside whether VoIP telephone subscribers should receive the protections of the TCPA and MHSSA DNC Provisions, to survive dismissal, a plaintiff still must plausibly allege facts establishing that their telephone number is actually used for "residential" purposes only to qualify as a "residential telephone

subscriber." 47 C.F.R. § 64.1200(c)(2); M.C.L. § 445.111a(5).[8] The term "residential telephone subscriber" is not defined by the TCPA, but courts have interpreted it to require proof that the number called was used for "residential purposes." *See, e.g., Lee v. Loandepot.com, LLC,* No. 14-CV-01084-EFM, 2016 WL 4382786, at *6 (D. Kan. Aug. 17, 2016).

Here, Dobronski alleges once that the at-issue telephone number is used "*primarily* for personal, family, and household communications, and not for business purposes." Compl., ECF No. 14, PageID.156, ¶ 31 (emphasis added). That allegation is conclusory and insufficient to state a DNC claim. *See, e.g., Hicks v. Alarm.com Inc.*, No. 1:20-cv-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (dismissing TCPA claim based on the plaintiff's failure to articulate — despite his allegations that the subject cell phone number was "not associated with a business and [was] for personal use" — any factual support for the "residential telephone subscriber" element of his claim). That pleading defect is significant because Dobronski has filed dozens of TCPA lawsuits in this District alone over the past 12 months relying on many different telephone numbers that he purports are each his "residential telephone number"—a curious claim for someone who appears to

---

[8] The FAC pleads that Rocket Mortgage violated the MHSSA "and *specifically* M.C.L. § 445.111a(5)." ECF No. 14, PageID.175, ¶ 143 (emphasis added). Because Section 111(a)(5) is the only referenced provision in the FAC, this is the only provision that Rocket Mortgage will address.

maintain a fleet of "residential lines."[9] Federal courts have held that whether someone qualifies as a "residential telephone subscriber" depends on whether the number is the "primary means of reaching the individual at their residence – that is, there is no other landline or phone at their residence which is instead the primary means of reaching them." *Mantha v. QuoteWizard.com*, No. 19-12235-LTS, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022).

Dobronski's numerous lawsuits indicate that the at-issue phone number appears instead to be used for the primary purpose of filing TCPA lawsuits as a business. *See Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016) (finding that calls to cell phones maintained solely for the purpose of generating legal claims could not support prudential standing); *see Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015) (explaining that "only certain plaintiffs will have suffered the particularized injury required to maintain an action

---

[9] Compl. ¶ 32, *Dobronski v. Ideal Concepts, Inc.*, No. 2:24-cv-12807 (E.D. Mich. Oct. 24, 2024), ECF No. 1 (alleging his "residential" number is "734-***-2177"); Am. Compl. ¶ 30, *Dobronski v. Medguard Alert, Inc.*, No. 2:24-cv-12940 (E.D. Mich. Jan. 7, 2025), ECF No. 10 (alleging his "residential telephone numbers" are "734-***-2174, 734-***-2175, 734-***-2177, and 321-***-0911"); Compl. ¶¶ 33-36, *Dobronski v. Rhodes*, No. 2:25-cv-12664 (E.D. Mich Aug. 25, 2025), ECF No. 1 (alleging his "residential telephones numbers are 734-***-*300[,] 407-***-*858 . . . [and are] primarily for personal, family, and household communications"); Compl. ¶¶ 46-48, *Dobronski v. Family First Life, LLC*, No. 2:22-cv-12039 (E.D. Mich Aug. 31, 2022), ECF No. 1 (alleging his "residential telephone numbers are 734-XXX-1000, 734-XXX-1212, and 734-XXX-2424" and his "cellular telephone number is 734-XXX-9671 . . . [which he] utilizes . . . primarily for personal, family, and household use").

in federal court for a [TCPA] violation" and that "[s]omeone with a generalized interest in punishing telemarketers, for example, would not qualify on that basis alone"). Based on these allegations, it is clear that Dobronski's VoIP telephone number are used to file TCPA lawsuits and not for a "residential" purpose, and that his number is improperly registered on the DNC. *See Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) ("business numbers are not permitted to be registered on the National [DNC] Registry"). An individual who has filed more than 60 *pro se* TCPA and similar cases based on the alleged receipt of unwanted phone calls to at least 7 different phone numbers does not have a legitimate residential privacy interest in his telephone number.[10]

Dobronski's MHSSA claim also fails for the same reasons. Although the MHSSA defines "residential telephone subscriber" as a "person residing in [Michigan] who has residential telephone service," it too does not define "residential

---

[10] In 2003, the FCC issued an Order that limiting residential subscribers to mean "telephone service used primarily for communications in the subscriber's residence" is "far too restrictive." 18 F.C.C. Rcd. at 14038 ¶¶ 34-35. Relying on this Order, this Court in *Dobronski v. CHW Grp., Inc*. held all four of Dobronski's telephone numbers were "entitled to the FCC's presumption of residential telephone subscriber." No. 24-cv-11649, 2025 WL 2426370, at *6 (Aug. 21, 2025). But *Loper Bright* now requires this Court conduct its own independent review of the provision. 603 U.S. at 400; *see Massarello*, 2025 WL 2463153, at *2. The TCPA does not define "residential telephone subscriber," and under the circumstances presented by this case, the Court should follow the *Mantha* court in holding that a "residential" telephone number should be the number that is the "primary means of reaching them" at their residence. *See Mantha*, 2022 WL 325722, at *6.

telephone service." M.C.L. § 445.111(l). For the same reasons just discussed that Dobronski can receive his VoIP telephone calls wherever he is located, his VoIP telephone service is not a "residential telephone service" under the MHSSA.

Because Dobronski cannot plead that his VoIP telephone service is a "residential" line or used for "residential" purposes only, Counts VIII-XI and XIII should be dismissed.

### F.    DOBRONSKI DOES NOT PLEAD THAT ROCKET MORTGAGE LACKED THE REQUISITE PROCEDURE FOR MAINTAINING AN INTERNAL DO-NOT-CALL LIST (COUNTS IX, X, AND XI).

Counts IX, X, and XI purport to allege violations of 47 C.F.R. § 64.1200(d)(1), (d)(3), and (d)(4), which govern internal DNC list requirements. Specifically, Section 64.1200(d) provides that:

> No person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive [telemarketing] calls made by or on behalf of that person or entity.

The regulation then lists "minimum standards" that these instituted procedures must meet, including that the caller (i) "have a written policy, available upon demand, for maintaining a do-not-call list" ((d)(1)); (ii) record requests to be placed on an internal do-not-call list and to honor such requested "within a reasonable time" not to exceed thirty days ((d)(3)); and (iii) for artificial or prerecorded-voice telephone calls, provide the called party with their name, the entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be

contacted ((d)(4)). Importantly, the plain language of the regulation sets forth certain procedures that a telemarketer must comply with "prior to the initiation" of a telemarketing call. *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 138-41 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017); 47 C.F.R. § 64.1200(d). As such, subsections (d)(1), (3), and (4) "do[] not create an independent cause of action separate from § 64.1200(d)" and the requirement to have implemented the necessary procedures. *Benzion v. Vivint, Inc.*, No. 12-61826-CIV-ZLOCH/HUNT, 2014 WL 11531368, at *5 (S.D. Fla. Jan. 17, 2014) (finding subsection (d)(3) does not create an independent cause of action separate from Section 64.1200(d)); *Burdge v. Ass'n Health Care Mgmt.*, No. 1:10–CV–00100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (finding Section 64.1200(d)(4) doesn't provide for a private right of action).

Consistent with this, federal courts have agreed that under Section 64.1200(d), it is the failure to institute the requisite procedures, including the procedure for maintaining an internal do-not-call list, which is a violation of the regulations, rather than the calls themselves. In *Charvat v. DFS Servs., LLC*, for example, the court dismissed two counts of plaintiff's complaint for failure to state a claim, noting that "[t]he regulations do not specifically proscribe actually calling an individual after the individual has requested placement on a do-not-call list…nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-

27

not-call list…." 781 F. Supp. 2d 588, 592-593 (S.D. Ohio 2011). Instead, "the only actual violation of the TCPA regulations occurs when a telemarketer initiates a call without having the proper procedures in place." *Id.* at 593; *Benzion*, 2014 WL 11531368, at *5 (dismissing complaint where plaintiff alleges "Defendant called Plaintiff back after being asked not to ever call again," but "does not allege that Defendant made either call while not having the proper procedures in place"); *Simmons*, 222 F. Supp. 3d at 140 ("[T]he failure to record a DNC request is not itself a violation of subsection (d)(3).").

Here, Dobronski's claims under Section 64.1200(d) fail because "[Dobronski] can only recover for a call made at a time when [Rocket Mortgage] did not have such a policy in place[.]" *See Hamilton v. Voxeo Corp.*, Nos. 3:07-cv-404, 3:08-cv-279, 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009) ("[plaintiff] cannot recover for [a defendant's] refusal to send him its do-not-call policy."). The FAC is devoid of any allegations that Rocket Mortgage did not maintain a written DNC policy at the time the calls were placed. To the contrary, he alleges that following Calls 1-20 in August 2025, he called Rocket Mortgage and requested for the calls to stop and that he received no more calls thereafter. With respect to Call 21 and Call 22 (a text message), the FAC pleads that those were made in response to a subsequent online inquiry following the calls ceasing in August. FAC, ECF No. 14, PageID.165, ¶ 79. Those allegations plausibly support that Rocket Mortgage *did* have the requisite

28

procedures instituted, and not the opposite. That is the end of the inquiry—
Dobronski has failed to plead a cognizable claim for violation of Section
64.1200(d)(1), (3), or (4). *See Benzion*, 2014 WL 11531368, at *5 ("A plain reading
of § 64.1200(d) reveals that any cause of action under it must include allegations
that the consumer received a phone call from the telemarketer when the telemarketer
did not have proper procedures in place to make such a phone call.").[11]

For these reasons, Counts IX, X, and XI should be dismissed.

### G.   COUNT XII FAILS BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION.

Dobronski's claim for violation of 47 C.F.R § 64.1601(e)(1) in Count XII
should be dismissed because there is no private right of action to bring a claim for
violation of 47 C.F.R. § 64.1601(e). *Dobronski v. Total Ins. Brokers, LLC*, No. 21-
10035, 2021 WL 4452218, at *3 (E.D. Mich. Sept. 29, 2021) (Levy, J.) ("The Court
agrees with Judge Ivy's analysis that the persuasive authority holds that there is no
private right of action for violations of § 64.1601(e), and therefore adopts the
recommendation to dismiss Count II of Plaintiff's amended complaint failure to state

---

[11] In 2018, the Southern District of Florida found that Rocket Mortgage had the
requisite internal do-not-call list and other procedures in place as early as 2012—
more than a decade before the 2025 telephone calls alleged here. *Nece v. Quicken
Loans, Inc.* (n/k/a/ Rocket Mortgage), No. 8:16-cv-2605-T-23CPT, 2018 WL
1326885, at *7-8 (M.D. Fla. Mar. 15, 2018). Dobronski pleads no plausible basis for
this Court to infer that Rocket Mortgage somehow had the requisite procedure in
2012, but not in 2025.

a claim."); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784 (E.D. Mich. 2020) ("*Selectquote 1*"); *Dobronski v. SunPath Ltd.*, No. 19-13094, 2020 WL 8840311, at *6 (E.D. Mich. July 27, 2020); *see also Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *7 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017).

Although in *Dobronski v. Selectquote Insurance Services* (*"Selectquote 2"*), this Court determined that "Section 64.1601(e) must have been promulgated under *some* part of the TCPA" and held that Section 227(c) was the "only subsection with the breadth of scope to cover § 64.1601(e)," the Court's analysis was incorrect. 773 F. Supp. 3d 373, 376-77 (E.D. Mich. Mar. 25, 2025) (Murphy, J.) (emphasis in original). That is because "[w]here a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is highly improbable that Congress—or here, the FCC—absent mindedly forgot to mention an intended private action." Congress does not hide elephants in mouseholes. *Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *16 (S.D. Cal. Nov. 6, 2017) (internal quotes omitted); *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) ("Congress will be explicit if it intends to create a private cause of action."). Congress did explicitly give the FCC authority to issue regulations regarding caller identification information in 47 U.S.C. § 227(e)(3), but did not create a corresponding private right of action.

In promulgating Section 64.1601(e), the FCC stated that Caller ID requirements would "improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." *See* 18 F.C.C. Rcd. at 14118-21. Tellingly, Congress did give consumers a private right of action to enforce the DNC rights, but not Caller ID rights. Thus, as one Court concluded, the FCC's issuance of Section 64.1601(e) "appears to support consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." *Meyer*, 2017 WL 5138316, at *17 (citing *Worsham*, 2016 WL 4592373, at *4). Because Congress gave the FCC authority to issue regulations regarding caller ID information but did not create a private right of action, it is highly improbable that Congress nonetheless intended to create a private right of action but forgot to say so. This Court should follow the overwhelming majority view in finding that this provision is not enforceable through a private right of action.

Even if there was a private right of action for alleged violations of Section 64.1601(e), Dobronski's FAC fails to plead the requisite allegations necessary to establish a violation. Under Section 64.1601(e), "caller identification information must include either CPN [the calling party number] or ANI [the automatic number identification], and, **when available by the telemarketer's carrier**, the name of the telemarketer." 47 C.F.R. §§ 64.1600, 64.1601(e)(1) (emphasis added). The FAC alleges that Calls 1-20 "displayed a caller identification number" of 800-926-6944

31

and that Call 21 displayed a "caller identification number" of 800-337-0704, but it is utterly devoid of any facts alleging that the telephone carrier had the ability to display the name of its customers on a caller ID received by Dobronski's VoIP service. *See* FAC, ECF No. 14, PageID.164-165, ¶¶ 65, 74.

For these reasons, Count XII should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Rocket Mortgage respectfully requests that this Court grant its Motion and dismiss the FAC in its entirety.

Respectfully submitted,

/s/ *W. Kyle Tayman*
W. Kyle Tayman
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
KTayman@goodwinlaw.com

Jeffrey M. Thomson (P72202)
MORGANROTH &
MORGANROTH PLLC
344 North Old Woodard Avenue,
Suite 200
Birmingham, MI 48009
Tel.: +1 248 864 4000
Fax: +1 248 864 4001
JThomson@morganrothlaw.com

*Counsel for Rocket Mortgage, LLC*

Dated: December 22, 2025

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 22, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all parties. I also caused a copy of the foregoing to be served by mail and email on the following pro se plaintiff:

Mark W. Dobronski
PO Box 99
Dexter, MI 48130-0099
markdobronski@yahoo.com

 /s/ *W. Kyle Tayman*
W. Kyle Tayman

1