## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARK W. DOBRONSKI,

      Plaintiff,

v.

ROCKET MORTGAGE, LLC,

      Defendant.

Case No. 4:25-cv-12798-FKB-KGA

Honorable F. Kay Behm
United States District Judge

Honorable Kimberly G. Altman
United States Magistrate Judge

_____

### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### ROCKET MORTGAGE LLC'S MOTION TO DISMISS
### <u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

Plaintiff Mark W. Dobronski, appearing *in propria persona*, hereby responds in opposition to Rocket Mortgage LLC's Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 19].

For the reasons set forth in the appurtenant brief, Plaintiff respectfully requests that this Court enter its order that Rocket Mortgage LLC's Motion to Dismiss Plaintiff's First Amended Complaint be **denied**.

Respectfully submitted,

Date: January 2, 2026

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
(734) 641-2300
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARK W. DOBRONSKI,

       Plaintiff,

v.

ROCKET MORTGAGE, LLC,

       Defendant.

Case No. 4:25-cv-12798-FKB-KGA

Honorable F. Kay Behm
United States District Judge

Honorable Kimberly G. Altman
United States Magistrate Judge

_____

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## ROCKET MORTGAGE LLC'S MOTION TO DISMISS
## <u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  Whether Counts I and II of the FAC fail to state a claim and should be dismissed because the allegations are devoid of any allegations to support that Rocket used an ATDS or an artificial or prerecorded voice to initiate the challenged calls?

2.  Whether Count II of the FAC fails to state a claim because it is entirely derivative of Count I?

3.  Whether Count III and Count XIV of the FAC fails to state a claim under the TCPA and MTCCCA and should be dismissed because Plaintiff failed to adequately plead that Rocket did not have consent to place thhis call, and because a text message is not a "recorded message" under the statute?

4.  Whether Count IV of the FAC fails to state a claim and should be dismissed because Plaintiff fails to adequately plead any facts to the suggest that Rocket, rather than Dobronski's own VoIP service, was the cause of the disconnection?

5.  WhetherCounts V, VI, and VII of the FAC fail to state a claim and should be dismissed bbecause there is no private right of action under 47 C.F.R. § 64.1200(a), and even if a private right of action exists, the FAC is devoid of allegations sufficient to state a claim against Rocket?

6.  Whether Counts VIII-XI, and XIII of the FAC fail to state a cause and should be dismissed because Dobronski cannot show that he received more than one telephone solicitation, VoIP telephone users are not "residential telephone subscribers" under the TCPA and MHSSA, and Plaintiff's allegations support that his VoIP telephone number is not used for "residential" purposes?

7.     Whether Counts IX, X, and XI of the FAC fail to state a claim and should be dismissed because Plaintiff does not adequately plead that Rocket lacked the requisite procedure for maintaining an internal do-not-call list?

8.     Whether Count XII of the FAC fails to state a claim and should be dismissed because there is no private right of action arising from a violation of 47 C.F.R. § 64.1601(e), and the FAC is devoid of plausible factual allegations sufficient to state a claim against Rocket for violation of this regulation?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, 708 F.3d 737 (6th Cir. 2013)

*Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136 (W.D. Wash. Oct. 9, 2025)

*Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698 (S.D.N.Y. 2013)

*Chennette v. Porch.com, Inc.*, 50 F. Supp. 3d 928 (N.D. Ill. 2014)

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022)

*Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012)

*Delek US Holdings, Inc. v. United States*, 32 F.4th 495 (6th Cir. 2022)

*Dobronski v. CHW Group, Inc.,* No. 24-CV-11649, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025)

*Dobronski v. Insurance Supermarket Inc.*, No. 23-10149, 2025 WL 3121332 (E.D. Mich. Aug. 1, 2025)

*Dobronski v. SelectQuote Insurance Services*, No. 2:23-CV-12597, 2025 WL 904370 (E.D. Mich. Jan. 14, 2025)

*Dobronski v. SelectQuote Insurance Services*, 773 F. Supp. 3d 373 (E.D. Mich. Mar. 25, 2025)

*FTC v. Morton Salt Co.*, 334 U.S. 37 (1948)

*Hashw v. Department Stores National Bank*, 986 F. Supp. 2d 1058 (D. Minn. 2013)

*Hines v. Volkswagen of America, Inc.*, 265 Mich. App. 432 (2005)

*Lucas v. Telemarketer*, No. 1:13-cv-00619, 2013 WL 4536872 (S.D. Ohio Aug. 27, 2013)

*Lynn v. Monarch Recovery Management, Inc.*, 953 F. Supp. 2d 612 (D. Md. 2013)

*Newell v. JR Capital, LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025)

*Satterfield v. Simon & Schuster*, 569 F.3d 946 (9th Cir. 2009)

*Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560 (2012)

*Warnick v. Dish Network LLC*, No. 14-cv-00024, 2014 WL 12537066 (D. Colo. Sept. 30, 2014)

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (2003)

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 38 FCC Rcd. 12247 (2023)

47 U.S.C. § 227

M.C.L. § 445.111

M.C.L. § 484.125

47 C.F.R. § 64.1200

47 C.F.R. § 64.1601(e)

Fed. R. Civ. P. 8(d)(3)

Fed. R. Civ. P. 12(b)(6)

*The Merriam-Webster New Collegiate Dictionary* (12th ed.)

## INTRODUCTION

Defendant Rocket Mortgage, LLC ("Rocket") is a habitual and recidivist violator of the Telephone Consumer Protection Act ("TCPA"). A review of the Court's PACER index reflects no fewer than fifty-five (55) TCPA actions filed in federal courts alone against Rocket, the majority of which are class actions. These actions arise from Rocket's ongoing and systematic practice of placing unsolicited and non-consensual telemarketing calls to consumers nationwide, in contravention of federal and state  laws.

Rocket deliberately inundated Plaintiff's residential telephone line with unsolicited telemarketing calls, despite the absence of consent and in clear violation of federal law. After enduring repeated intrusions upon his privacy and seclusion, Plaintiff elected to exercise his rights under the TCPA. In doing so, Plaintiff acts as a private attorney general, enforcing Congress's mandate by holding repeat violators—such as Rocket—accountable through the courts and deterring continued unlawful conduct.

In a transparent effort to evade liability for its unlawful conduct, Rocket mounts a facial attack on Plaintiff's First Amended Complaint ("FAC") [ECF No. 14], alleging a series of contrived and meritless "deficiencies." Rocket's motion disregards the governing Rule 12(b)(6) pleading standard. As set forth below, the

FAC pleads specific, non-conclusory factual allegations which, accepted as true, readily state plausible claims for relief under the TCPA. Rocket's attempt to terminate this action at the pleading stage therefore fails. Because the FAC more than adequately states viable claims for relief, Rocket's motion should be denied and this action permitted to proceed so that Rocket may be held accountable for its violations of federal law.

## BACKGROUND

Plaintiff Mark W. Dobronski brought this civil against Rocket alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, et seq., the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*, and the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, stemming from a series of twenty-one telephone solicitation calls initiated by Rocket to Plaintiff's residential telephone number without his consent. *See* FAC [ECF No. 14].

## LEGAL STANDARD

In assessing a motion to dismiss under Rule 12(b)(6), this court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation and citation omitted); *Inge v. Rock Financial Corp.*, 281 F.3d 613, 619 (6th Cir., 2002). In assessing whether a plaintiff has met his burden, the Court accepts as true the plaintiff's well-pleaded factual allegations and draws all reasonable inferences in the light most favorable to the plaintiff. See *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir., 2007); see also *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562–63 (6th Cir., 2011). In considering a Rule 12(b)(6) motion, a district court must limit its inquiry to the four corners of the complaint. *Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co.*, 618 Fed.Appx. 246, 255 (6th Cir., 2015). The defendant has the burden of showing that the plaintiff has failed to state a plausible claim for relief. *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir., 2019). However, ordinarily "if the requisite allegations are not in the complaint and a motion to dismiss for failure to state a claim upon which relief may be granted is made under Rule 12(b)(6), the pleader should be given the opportunity to amend the complaint, if [he or she] can, to show the existence of the missing elements." *Walker v. Shermeta, Adams, Von Allmen, PC*, 623 Fed.Appx. 764, 768 (6th Cir., 2015).

## ARGUMENT

### A. Dobronski Plausibly Alleges that Rocket Used an ATDS or Artificial or Prerecorded Voice (Counts I & II).

Rocket contends that Plaintiff fails to plausibly allege that Rocket used an

automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice when initiating the challenged calls. [ECF No. 19, PageID.234]. This argument ignores the well-pleaded factual allegations set forth in the FAC.

Plaintiff expressly alleges that Rocket "initiates telephone calls en masse using automated telephone dialing systems which have the capacity to store or produce telephone numbers using a random or sequential number generator to dial such numbers, to solicit consumers." [ECF No. 14, PageID.162, ¶ 60]. The FAC further pleads that Rocket inputs lists of telephone numbers into its system, which then uses a random or sequential number generator to select and dial numbers from those lists. [ECF No. 14, PageID.162–63, ¶ 61]. In addition, Plaintiff alleges that a Rocket employee or agent affirmatively disclosed that Rocket "use[s] an AI-integrated, automated system to make the calls." [ECF No. 14, PageID.166, ¶ 81]. These factual allegations are more than sufficient to plausibly plead the use of an ATDS at the motion-to-dismiss stage.

The FCC has recognized that ATDS technology is responsible for the vast majority of abandoned telemarketing calls, including hang-ups and "dead air" calls. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14102 ¶ 147 (2003). Here, the FAC alleges twenty hang-up or dead-air calls, all originating from the same telephone number over a

nine-day period. [ECF No. 14, PageID.163–64, ¶¶ 64–66]. Courts have repeatedly held that the receipt of multiple calls over a short period of time from the same number is sufficient, at the pleading stage, to support a reasonable inference that an ATDS was used. *Hashw v. Department Stores National Bank*, 986 F. Supp. 2d 1058, 1061 (D. Minn. 2013).

Indeed, nearly identical arguments to those raised by Rocket here were recently rejected by this Court in *Dobronski v. CHW Grp., Inc.*, No. 24-CV-11649, 2025 WL 2426370, at *5 (E.D. Mich. Aug. 21, 2025), motion to certify appeal denied, No. 24-CV-11649, 2025 WL 3068732 (E.D. Mich. Nov. 3, 2025), where the Court held that the plaintiff's allegations "plausibly plead the improper use of an ATDS."

Plaintiff has also plausibly alleged the use of an artificial or prerecorded voice. The FAC alleges that during Call 21, the call was introduced by a robotic voice. [ECF No. 14, PageID.165, ¶ 75]. The FAC further alleges that Plaintiff was then subjected to a lengthy prerecorded message promoting "partnering with Rocket Mortgage." [ECF No. 14, PageID.167, ¶ 92]. These allegations independently state a claim under the TCPA.

Finally, Rocket's contention that Counts I and II are redundant is incorrect. Federal Rule of Civil Procedure 8(d)(3) expressly permits a plaintiff to plead alternative and even inconsistent claims. Counts I and II arise under distinct

11

regulatory provisions. Count I alleges violations of 47 C.F.R. § 64.1200(a)(1)(iii), while Count II alleges violations of 47 C.F.R. § 64.1200(a)(2). The TCPA provides that a plaintiff "may receive $500 in damages … for each such violation" of the regulations promulgated under the statute. 47 U.S.C. § 227(b)(3). Accordingly, Counts I and II are properly pled and should not be dismissed.

### B. Plaintiff Adequately Pleads that Rocket Initiated an Artificial of Prerecorded Message Without his Consent. (Counts III and XIV).

Rocket argues that it obtained Plaintiff's contact information, including his telephone number, through an online inquiry and therefore infers that it had "consent" to contact Plaintiff. [ECF No. 19, PageID.238–39]. The FAC acknowledges that Rocket's representative, George, asserted this claim to Plaintiff. [ECF No. 14, PageID.165, ¶ 79]. However, the FAC also expressly alleges that Plaintiff informed George that he did not submit any online inquiry, was not seeking to purchase a home, and that his telephone number is listed on the National Do Not Call Registry. [ECF No. 14, PageID.166, ¶ 80]. At the pleading stage, these factual allegations must be accepted as true and directly undermine Rocket's unsupported inference of consent.

The FCC has made clear that the burden of proving valid consent rests squarely on the caller, not the consumer:

> "[T]he TCPA and our existing rules . . . place the burden of

> proof on the texter or caller to prove that they have
> obtained consent that satisfies federal laws and regulations.
> . . . And, in all cases, the consent must be from the
> consumer. 'Fake leads' that fabricate consumer consent do
> not satisfy the TCPA or our rules."

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 38 FCC Rcd. 12247, 12267 ¶ 49 (2023).

Rocket's consent argument therefore raises, at most, a disputed factual issue that cannot be resolved on a motion to dismiss.

Rocket further contends that the MTCCCA "prohibits 'recorded message[s]' for commercial advertising, which means voice messages, not text messages... A text message cannot constitute a 'recorded message' under the MTCCCA." [ECF No. 19, PageID.240]. This argument fails as a matter of statutory interpretation. The MTCCCA does not define the term "recorded message."

When a statutory term is undefined, courts apply its ordinary meaning. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566 (2012). Ordinary meaning may be discerned by reference to dictionaries in use at the time of enactment. *Delek US Holdings, Inc. v. United States*, 32 F.4th 495, 498 (6th Cir. 2022).

*The Merriam-Webster New Collegiate Dictionary* (12th ed.) defines "recorded" as "to set down in writing; furnish written evidence of; [or] to cause (sound, visual images, data, etc.) to be registered on something . . . in reproducible form," and

defines "message" as "a communication in writing, in speech, or by signals." Under these ordinary meanings, a text message plainly constitutes a "recorded message": it is a written communication that is registered and stored on a recipient's telephone.

Accordingly, Plaintiff has plausibly alleged that Rocket transmitted "recorded messages" within the meaning of the MTCCCA, and Rocket's contrary interpretation finds no support in the statutory text. Dismissal on this basis is therefore unwarranted.

### C.   Plaintiff Adequately Alleges Rocket Initiated and Disconnected the Challenged Calls (Count IV).

Rocket argues that Count IV should be dismissed because Plaintiff allegedly "does not offer any facts supporting his conclusory allegation that Rocket Mortgage disconnected each of the challenged calls after only one ring." [ECF No. 19, PageID.242]. This argument mischaracterizes the allegations in the FAC.

The FAC expressly alleges that "[f]or each of Calls 1 through 20, supra, the inbound call rang once and immediately terminated before Plaintiff could answer the telephone." [ECF No. 14, PageID.164, ¶ 66]. Count IV further alleges that each call violated the TCPA because "Defendants or Defendants' agent disconnected an unanswered telemarketing call prior to at least fifteen (15) seconds or four (4) rings." [ECF No. 14, PageID.170, ¶ 112]. These allegations are factual and specific, and they must be accepted as true at the pleading stage.

Moreover, it is well recognized that the use of automatic telephone dialing

14

systems can result in prematurely terminated telemarketing calls. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14102 ¶ 147 (2003). Plaintiff is not required at this stage to plead the precise technical mechanism that caused the calls to disconnect, particularly where the alleged pattern—twenty calls over a nine-day period, each terminating after a single ring—is consistent with autodialed telemarketing activity.

Rocket's attempts to speculate about alternative reasons for the call disconnections are immaterial. Courts have consistently held that liability under 47 U.S.C. § 227(b) arises from the act of initiating a call, regardless of whether the call is answered or completed. *See*, *e.g.*, *Satterfield v. Simon & Schuster*, 569 F.3d 946, 953 n.3 (9th Cir. 2009) ("Congress used the word 'call' to refer to an attempt to communicate by telephone."); *Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, 708 F.3d 737, 742 (6th Cir. 2013) (adopting *Satterfield*'s definition of "call"); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 720 (S.D.N.Y. 2013) (holding it immaterial whether calls were answered or went unanswered); *Warnick v. Dish Network LLC*, No. 14-cv-00024, 2014 WL 12537066, at *3 (D. Colo. Sept. 30, 2014) (same); *Lucas v. Telemarketer*, No. 1:13-cv-00619, 2013 WL 4536872, at *3 (S.D. Ohio Aug. 27, 2013) ("[A] violation occurs upon the initiation of the call, regardless of whether a message is left.").

By inviting the Court to hypothesize alternative explanations for the repeated disconnections, Rocket improperly seeks to draw inferences against Plaintiff and to resolve factual disputes at the motion-to-dismiss stage. Rule 12(b)(6) does not permit such an inquiry. Plaintiff has plausibly alleged violations of the TCPA, and Count IV should therefore not be dismissed.

### D.   Plaintiff's Abandoned Call Claims Have a Private Right of Action Under 47 U.S.C. § 227(b).  (Counts V, VI, and VII).

Rocket argues that the abandoned-call claims asserted in Counts V, VI, and VII should be dismissed on two grounds: (1) there is no private right of action for violations of the abandoned-call regulation, 47 C.F.R. § 64.1200(a)(7) [ECF No. 19, PageID.243]; and (2) Plaintiff fails to allege facts permitting an inference that Rocket abandoned any calls, much less more than three percent of its telemarketing calls [ECF No. 19, PageID.245]. Both arguments fail as a matter of law.

### i.   Plaintiff's Claims Have a Private Right of Action Under 47 U.S.C. § 227(b)

Rocket first contends—without meaningful analysis or supporting authority—that Counts V–VII lack a private right of action because 47 C.F.R. § 64.1200(a)(7) was purportedly promulgated under 47 U.S.C. § 227(d). [ECF No. 19, PageID.243]. This assertion is incorrect.

Section 227(d) authorizes the FCC to prescribe technical and procedural

standards governing telephone facsimile machines and artificial or prerecorded voice systems. See 47 U.S.C. § 227(d)(2)–(3). Counts V–VII do not allege violations involving fax machines or artificial or prerecorded voice messages. Instead, those counts allege violations of the FCC's abandoned-call rules, which prohibit telemarketing calls that are not connected to a live sales representative within two seconds of the called party's completed greeting. [ECF No. 14, PageID.171, ¶ 116; PageID.172, ¶¶ 121, 124].

Congress expressly delegated authority to the FCC, under 47 U.S.C. § 227(b)(2), to promulgate regulations restricting the use of automated telephone equipment. A private right of action exists for violations of both § 227(b) and the regulations promulgated thereunder. *See* 47 U.S.C. § 227(b)(3). The abandoned-call regulation codified at 47 C.F.R. § 64.1200(a)(7) was adopted pursuant to this authority to address consumer harm caused by automated telemarketing calls that disconnect before a live agent is available. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14106 ¶ 153 (2003).

Accordingly, violations of § 64.1200(a)(7) are actionable under § 227(b), and Rocket's contention that no private right of action exists is without merit.

### ii.   The Three-Percent Abandonment Rate Is an Affirmative Defense for Which Rocket Bears the Burden of Proof

Rocket next argues that Plaintiff has failed to allege facts sufficient to infer that Rocket abandoned any calls, let alone more than three percent of its telemarketing calls. [ECF No. 19, PageID.245]. This argument improperly shifts the burden of proof and ignores the well-pleaded allegations of the FAC.

Plaintiff alleges that he answered each of the challenged calls, but the caller disconnected before a live agent was connected. As alleged, these calls meet the FCC's definition of "abandoned." *See* 47 C.F.R. § 64.1200(a)(7). At the pleading stage, Plaintiff is not required to establish Rocket's overall abandonment rate across an entire calling campaign.

In any event, the FAC specifically alleges that all twenty-one calls Plaintiff received from Rocket were abandoned, which "strongly infers that Defendant abandons more than three percent of all telemarketing calls that are answered live by a person, as measured over a 30-day period of a single calling campaign." [ECF No. 14, PageID.171, ¶ 117]. These allegations are sufficient to state a plausible claim for relief.

Moreover, the FCC has made clear that the three-percent abandonment rate operates as a "safe harbor," not as an element of a plaintiff's claim. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14104 ¶ 149 (2003). Telemarketers are required to maintain records

18

demonstrating compliance with the abandonment-rate threshold, ring-time requirements, and the two-second live-agent connection rule, and to produce those records to establish compliance. *Id.* at 14110 ¶ 158.

Safe-harbor provisions constitute affirmative defenses, and the burden of proof rests with the defendant. Federal courts consistently hold that once a plaintiff pleads a prima facie TCPA violation, the defendant bears the burden of establishing entitlement to any exemption or safe harbor. This allocation follows longstanding Supreme Court precedent that "the burden of proving justification or exemption under a special exception to a statute generally rests on the party claiming it." *FTC v. Morton Salt Co.*, 334 U.S. 37, 44–45 (1948). Because the safe harbor excuses liability rather than negating an element of the claim, Rocket must plead and prove compliance—it is not Plaintiff's burden to plead noncompliance.

The three-percent safe-harbor language is relevant only to Count V, which alleges violations of 47 C.F.R. § 64.1200(a)(7). With respect to Counts VI and VII, the three-percent threshold does not appear in either 47 C.F.R. § 64.1200(a)(7)(i)(A) or § 64.1200(a)(7)(i)(B), respectively, and therefore has no bearing on whether violations occurred under those counts. *See Dobronski v. SelectQuote Insurance Services*, No. 2:23-CV-12597, 2025 WL 904370, at *9 (E.D. Mich. Jan. 14, 2025) ("The regulation does not state that it becomes necessary to use an opt-out mechanism

only after a caller has abandoned three percent of calls, or that an answerer cannot sue when a caller fails to comply with the three-percent rule in calls to others.").

Accordingly, Rocket's arguments improperly seek to resolve factual disputes and affirmative defenses at the motion-to-dismiss stage. Counts V, VI, and VII plausibly allege violations of the TCPA and should not be dismissed.

E. **Plaintiff's DNC Claims (Counts VIII-XIII).**

i. **Plaintiff Pleads the Receipt of More Than One "Telephone Solicitation."**

Rocket contends that Counts VIII and XIII must be dismissed because Plaintiff allegedly fails to plead receipt of more than one "telephone solicitation," as required by 47 U.S.C. § 227(c)(5) to state a claim under 47 C.F.R. § 64.1200(c) and the Michigan Home Solicitation Sales Act ("MHSSA"). [ECF No. 19, PageID.245]. This argument is meritless.

First, Rocket asserts that Plaintiff "pleads no factual allegations" regarding Calls 1 through 20. *Id.* This is demonstrably false. The FAC expressly alleges that Plaintiff initiated a confrontation call to Rocket after repeatedly receiving calls from telephone number 800-926-6944, during which Plaintiff asked why Rocket had been calling him. [ECF No. 14, PageID.164, ¶ 70]. In response, Rocket's employee confirmed that Rocket's internal systems showed multiple attempts to contact Plaintiff "to discuss his interest in mortgage refinancing." *Id.* ¶ 71.

Initiating telephone calls for the purpose of discussing mortgage refinancing plainly falls within the statutory definition of a "telephone solicitation." *See* 47 C.F.R. § 64.1200(f)(15)(i) (defining telephone solicitation as a call initiated "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services"). As discussed *supra*, the violation occurs at the moment the solicitation call is initiated, regardless of whether the call is answered or completed.

Rocket further suggests that none of the calls qualify as "telephone solicitations" because it allegedly had prior express permission from Plaintiff (or someone acting on his behalf). [ECF No. 19, PageID.247]. Plaintiff expressly denies this assertion. The FAC alleges that Plaintiff informed Rocket's employee that he did not submit any online inquiry, was not seeking to purchase a home, and that his telephone number is listed on the National Do Not Call Registry. [ECF No. 14, PageID.166, ¶ 80]. At minimum, whether Rocket possessed prior express consent is a disputed issue of fact that cannot be resolved at the pleading stage.

Finally, Rocket argues that Call 22 was merely a text message containing only a Rocket team member's contact information and therefore did not constitute a "telephone solicitation." [ECF No. 19, PageID.247]. This argument improperly elevates form over substance.

The TCPA defines a "telephone solicitation" as:

"the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).

The operative phrase—"for the purpose of"—is dispositive. Courts must examine why the call or message was made, not merely its format or whether it explicitly mentions a product. The FCC, whose interpretations are entitled to deference, has repeatedly emphasized that the intent and primary objective of the communication controls. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14098 ¶ 142 (2003) ("If the call is intended to offer property, goods, or services for sale either during the call, or in the future … that call is an advertisement.").

Neither the TCPA nor its implementing regulations require an explicit reference to a product or service where the commercial purpose is clear from the context. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). Here, the FAC plausibly alleges that the text message was sent as part of Rocket's broader effort to solicit Plaintiff regarding mortgage services, which is sufficient at the pleading stage.

For these reasons, Counts VIII and XIII should not be dismissed.

### ii.    A VoIP Telephone Subscriber Is a "Residential Telephone Subscriber" Under the TCPA and the MHSSA

Rocket contends that Plaintiff's claims fail because his telephone service is provided via Voice over Internet Protocol ("VoIP") rather than a traditional landline. That argument fails as a matter of law. Neither the federal TCPA nor the Michigan MHSSA conditions consumer protection on obsolete telecommunications technology.

### 1.    The TCPA Is Technology-Neutral and Protects Residential VoIP Subscribers

The TCPA protects "residential telephone subscribers" from unlawful telephone solicitations. 47 U.S.C. § 227(c)(5). The statute does not define that term by reference to the technical means by which calls are transmitted, nor does it exclude VoIP service. Instead, the statute focuses on the nature of the subscriber and the use of the telephone number—namely, whether it is used for residential, personal purposes.

The Federal Communications Commission ("FCC"), whose interpretations of the TCPA are entitled to deference, has repeatedly emphasized that the statute must be applied in a technology-neutral manner to prevent erosion of consumer protections as communications technologies evolve. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 189 (2003). Excluding VoIP subscribers would directly contravene this guidance and allow telemarketers to evade liability simply because consumers have replaced traditional landlines with modern equivalents.

Courts have therefore consistently rejected arguments that VoIP subscribers fall outside the TCPA's protection, holding that a residential subscriber does not lose statutory rights by using newer technology. *See, e.g.*, *Lynn v. Monarch Recovery Management, Inc.*, 953 F. Supp. 2d 612, 618–19 (D. Md. 2013); *Chennette v. Porch.com, Inc.*, 50 F. Supp. 3d 928, 934–35 (N.D. Ill. 2014). The determinative inquiry is whether the number is used for personal, household purposes—not how the call is transmitted.

### 2. The MHSSA Protects Residential Consumers and Does Not Exclude VoIP Telephone Service

The MHSSA is a remedial consumer-protection statute designed to regulate solicitation activity directed toward individuals in their homes.

Nothing in the MHSSA conditions its protections on the type of telephone service used, nor does the statute distinguish among landline, cellular, or VoIP-based communications. Instead, the Act focuses on the residential status of the consumer and the seller's initiation of a solicitation directed to the consumer's home.

Michigan courts have repeatedly held that consumer-protection statutes such as the MHSSA must be construed broadly to effectuate their remedial purpose. *Hines v. Volkswagen of America, Inc.*, 265 Mich. App. 432, 443 (2005). Reading the MHSSA to exclude consumers who receive solicitations through VoIP telephone service would improperly narrow the statute and defeat its purpose.

24

### 3. Excluding VoIP Subscribers Would Undermine Both Statutes' Remedial Purposes

VoIP service now commonly functions as a direct replacement for traditional residential landlines. Allowing telemarketers to evade liability under the TCPA and MHSSA based solely on the transmission technology would create a loophole wholly inconsistent with modern residential communication practices and contrary to legislative intent.

Both statutes are concerned with where the solicitation is directed—the home—and who is being solicited—a residential consumer—not the technological medium used to deliver the call. Nothing in either statute supports Rocket's attempt to impose a technology-based exclusion.

### iii. Plaintiff Adequately Pleads That His Telephone Number Qualifies is "Residential"

Rocket further argues that Plaintiff has failed to adequately plead that his telephone number is used for residential purposes. This argument misstates both the law and the pleadings.

At the pleading stage, Plaintiff need only allege that he is a residential consumer whose telephone number is used primarily for personal, non-business purposes and who received unlawful solicitations. Plaintiff has done so. Whether his residential service is provided via VoIP rather than a traditional landline is legally

irrelevant and, at minimum, presents a factual issue inappropriate for resolution on a motion to dismiss.

The FAC expressly alleges that: "Plaintiff uses his residential telephone number 734-***-*212 primarily for personal, family, and household communications, and not for business purposes." [ECF No. 14, PageID.156, ¶ 31]; "Plaintiff's residential telephone number 734-***-*212 is listed on the National Do Not Call Registry." [ECF No. 14, PageID.155, ¶ 30); and "The calls were received by Plaintiff while he was at his residence located in Washtenaw County, Michigan." [ECF No. 14, PageID. 156, ¶ 33].

The TCPA's Do Not Call provisions apply to calls made to a "residential telephone subscriber" who has registered a number on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2). A telephone number used for both personal and business purposes may still qualify as residential. In *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022), the court held that a phone used for mixed purposes is presumptively residential for purposes of § 227(c), particularly where the number is registered on the Do Not Call Registry. Mixed use alone does not defeat TCPA protection at the motion-to-dismiss stage.

Defendants may attempt to rebut this presumption with evidence that the number functions as a business line—which it does not—but such factual inquiries

are improper on a Rule 12 motion.

**F.   Plaintiff Plausibly Plead that Rocket Lacked the Requisite Procedure for Maintaining an Internal Do-Not-Call List (Counts IX-XI).**

Rocket argues that Plaintiff's claims under Counts IX–XI fail because "the FAC is devoid of any allegations that Rocket Mortgage did not maintain a written DNC policy at the time the calls were placed." [ECF No. 19, PageID.256]. That assertion is flatly contradicted by the allegations in the FAC.

The FAC alleges that Plaintiff repeatedly requested a copy of Rocket's written do-not-call policy and that Rocket's employees were unable—or unwilling—to provide one. Specifically, Plaintiff pleads:

> "Plaintiff made demand to George to receive a copy of Rocket's written do-not-call policy. George responded that he could not provide one, but that he would refer Plaintiff to his client relations team to see if they have some kind of documents."

[ECF No. 14, PageID.166, ¶ 82].

After being transferred, Plaintiff again requested the policy:

> "Plaintiff made demand to Marquita for a copy of Rocket's written do-not-call policy. Marquita responded that she could not provide one."

[ECF No. 14, PageID.167, ¶ 89].

The FAC further alleges that Plaintiff was transferred to yet another Rocket

employee:

> "Plaintiff made demand to Alicia to be provided a copy of
> Rocket's written do-not-call policy. Alicia responded that
> she would have to look into the matter to see if that is
> something that she could get and provide to Plaintiff.
>
> As of the date of the filing of this amended complaint,
> Plaintiff has not been provided with a copy of Rocket's
> written do-not-call policy."

[ECF No. 14, PageID.168, ¶¶ 97–98].

The plain text of the regulation requires that a caller maintain a do-not-call policy that is both (1) written and (2) available upon demand. 47 C.F.R. § 64.1200(d). Plaintiff alleges that Rocket failed to provide a written policy despite multiple, explicit requests. From those allegations, a reasonable jury could conclude that Rocket did not maintain a written do-not-call policy at the time the calls were placed.

At the pleading stage, Rocket's repeated failure to produce the policy gives rise to a reasonable inference that no such written policy existed, or that Rocket failed to maintain it as required by law—either of which constitutes a violation of § 64.1200(d). *See Dobronski v. SelectQuote Insurance Services*, No. 2:23-CV-12597, 2025 WL 904370, at *11 (E.D. Mich. Jan. 14, 2025).

Accordingly, Plaintiff has adequately stated claims under Counts IX, X, and XI, and those counts should not be dismissed.

**G.     There is a Private Right of Action Arising From a Violation of 47**

**C.F.R. § 64.1601(e) (Count XII).**

Rocket argues that Count XII should be dismissed because "there is no private right of action to bring a claim for violation of 47 C.F.R. § 64.1601(e)." [ECF No. 19, PageID.257]. In support, Rocket cites a handful of cases—many involving Plaintiff—that previously reached that conclusion. Rocket's argument, however, ignores subsequent controlling and persuasive authority squarely rejecting that position.

This precise issue was carefully reconsidered in *Dobronski v. SelectQuote Insurance Services*, where the court concluded that "47 C.F.R. § 64.1601(e) was promulgated to enforce 47 U.S.C. § 227(c), and that the private right of action in § 227(c)(5) is, therefore, available for violations of § 64.1601(e)." 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025) (Murphy, J.). In reaching that conclusion, Chief Judge Murphy undertook a comprehensive analysis of the very cases Rocket relies upon here and explained in detail why those decisions were wrongly decided.

Since *SelectQuote*, multiple courts have independently reached the same conclusion, holding that violations of § 64.1601(e) are enforceable through the TCPA's private right of action under § 227(c)(5). *See, e.g.*, *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *6 (W.D. Wash. Oct. 9, 2025) ("§ 64.1601(e) confers a private right of action"); *Dobronski v. CHW*

*Group, Inc.,* No. 24-CV-11649, 2025 WL 2426370, at *8 (E.D. Mich. Aug. 21, 2025)

("§ 64.1601(e)(1), through § 227(c)(5)(B), provides a private right of action");

*Dobronski v. Insurance Supermarket Inc.*, No. 23-10149, 2025 WL 3121332, at *14

(E.D. Mich. Aug. 1, 2025) ("§ 64.1601(e) was promulgated to enforce § 227(c), so

Plaintiff has a private right of action"); *Newell v. JR Capital, LLC*, 791 F. Supp. 3d

571, 582 (E.D. Pa. 2025) ("Because Congress expressly created a private cause of

action for violations of regulations prescribed under § 227(c), there is a private cause

of action to enforce violations of § 64.1601(e).").

Lastly, Rocket argues—almost as an afterthought—that even if a private right

of action exists, Plaintiff fails to allege facts showing that the telephone carrier had

the ability to transmit accurate caller ID information. [ECF No. 19, PageID.259–260].

This argument improperly shifts the burden of proof.

The FCC has expressly held that when caller ID information is inaccurate or

missing, "the telemarketer must provide clear and convincing evidence that the caller

ID information could not be transmitted." *In re Rules & Regulations Implementing

the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14121 ¶ 179

(2003). Plaintiff is not required at the pleading stage to anticipate or negate Rocket's

affirmative defense. Whether Rocket can meet its burden of showing technological

impossibility is a factual question inappropriate for resolution on a motion to dismiss.

Accordingly, Plaintiff has adequately stated a claim under Count XII, and Rocket's motion to dismiss that count should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter it order that Rocket Mortgage, LLC's Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 19] be **denied**.

Respectfully submitted,

Date: January 2, 2026

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
(734) 641-2300
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **January 2, 2026**, I electronically filed the foregoing *Plaintiff Response in Opposition to Defendant Rocket Mortgage, LLC's Motion to Dismiss Plaintiff's Forst Amended Complaint* with the Clerk of the Court via the Court's Pro Se Document Upload utility, which will send notification of such filing to all counsel of record via the CM/ECF system.

_____
Mark W. Dobronski