UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,

Plaintiff,

v.

ROCKET MORTGAGE, LLC,

Defendant.
_________________________________/

Case No. 4:25-cv-12798
District Judge F. Kay Behm
Magistrate Judge Kimberly G. Altman

# ORDER RESOLVING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (ECF No. 44)[1]

## I. Introduction

This is a consumer rights case under the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227 *et seq*, the Michigan Home Solicitation Sales Act (MHSSA), M.C.L. § 445.101, *et seq*., and the Michigan Telephone Companies as Common Carriers Act (MTCCCA), M.C.L. § 484.101, *et seq*. Plaintiff Mark W. Dobronski, proceeding *pro se*, is suing Rocket Mortgage, LLC (Rocket) for unauthorized phone calls and text messages allegedly sent to him by Rocket in violation of the cited acts. (ECF No. 14, First Amended Complaint).

[1] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

The case is currently in limited discovery on the issue of contract formation as it relates to Rocket's motion to compel arbitration. (ECF No. 32). Dobronski has filed a motion for protective order regarding Rocket's third-party subpoenas to Comcast Corporation, Yahoo Inc., and Bandwidth Inc. (ECF No. 38). Dobronski takes no issue with the subpoena to Comcast but asks the Court to narrow the requests to Yahoo and Bandwidth in accordance with the current period of limited discovery. (*Id.*).

For the reasons stated below, the Court will order that the Yahoo subpoena be limited as described below (only in the manner previously agreed to by Rocket). The Bandwidth subpoena shall be limited to the following discovery from the month of August 2025: the identity of the account holder, payor, and authorized users; whether the relevant VoIP account or interface was accessed from the specified IP address; and technical provisioning fields necessary to interpret a matching access.

## II. Legal Standard

The scope of discovery permits a party to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The scope, however, may be "limited by court order," *id.*, meaning it is within the sound discretion of the Court. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 704 (E.D. Mich. 2017) ("Further, a court has broad discretion over discovery matters . . . and in deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and an order of the same is overruled only if the district court finds an abuse of discretion." (internal citation omitted)). Moreover, discovery is more liberal than even the trial setting, as Rule 26(b) allows discovery of information that "need not be admissible in evidence." Fed. R. Civ. P. 26(b)(1).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Good cause exists if "specific prejudice or harm will result" from the absence of a protective order. *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016). To justify a protective order, one of Rule 26(c)(1)'s enumerated harms "must be illustrated with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004)). Finally, "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought . . . can be obtained from some

other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## III. Discussion

The underlying issue currently is whether one or two online submissions to Rocket's website, authorizing the company to reach out to the user regarding a home loan, were made by Dobronski. If so, Rocket argues, Dobronski has assented to the communications of which he complains and is bound by the terms of the agreement between the parties, including its mandatory arbitration clause.

Within the period of limited discovery on contract formation, Rocket has sent third-party subpoenas to Comcast, Yahoo, and Bandwidth. As noted above, Dobronski takes no issue with the subpoena sent to Comcast but believes that the subpoenas to Yahoo and Bandwidth should be limited in accordance with discovery limitations and for privacy purposes.

### A. Yahoo Subpoena

The Yahoo subpoena defines the relevant period of production as July 1 to October 31, 2025. (ECF No. 38-3, PageID.510). Dobronski takes issue with the length of the relevant period and other aspects of the requests as follows:

> Request 1 expressly seeks Plaintiff's date of birth. Request 3 expressly seeks account-recovery telephone numbers and email addresses, "security questions and associated responses," and records of changes to those details. These questions and answers serve as password-recovery prompts and credentials. Requests 2 and 4 seek account-creation IP and device information and every login with IP, location,

> and device information. The subpoena does not literally say "passwords," but its broad demand for all account-identifying data and recovery details risks disclosure of password-related information and should expressly exclude passwords, password hashes, reset tokens, and the answers to reminder or security prompts. Rocket proposes a July 11 through September 11 period (Ex. 5) and removal of date of birth and security answers, but still seeks generalized login history and recovery information. Plaintiff is willing to stipulate to ownership of the account and permits an inquiry whether 173.167.231.105 accessed it at or near the alleged August 11 event, with timestamp and matching session or device information.

(ECF No. 38, PageID.485-486).

Dobronski says that his date of birth and the information in Request 3, which relates to common password-recovery prompts, carry concrete account-security risks that ordinary confidential treatment after production would not eliminate. He further appears to argue that, based on the discovery limitations currently in place, Yahoo's response should be limited to "whether the specified IP address accessed [his] identified account during a reasonable interval [of time] surrounding August 11," and that if so, Yahoo should "supply the relevant timestamp and available session, device, and user-agent fields for that match." (*Id.*, PageID.489). He is willing to stipulate to ownership of the relevant Yahoo account and believes that "date of birth, passwords, password hashes, reset tokens, security questions and answers, and recovery-contact details" should be excluded from production.[2] (*Id.*).

[2] It is unclear whether Rocket is in possession of subpoena responses from Yahoo or Bandwidth, but to the extent that it may be, the Court has ordered Rocket "to

Rocket argues that Dobronski's privacy concerns are adequately addressed by a stipulated protective order that would relate to confidentiality.[3] *See Gen. Motors Corp. v. Dir. of Nat. Inst. for Occupational Safety & Health, Dep't of Health, Ed. & Welfare*, 636 F.2d 163, 165-66 (6th Cir. 1980) (enforcement of a subpoena for the production of medical records of automaker's employees did not intrude upon protected privacy interests where safeguards against the improper disclosure of the confidential information could be implemented); *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic*, *P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016) (denying motion to quash third-party subpoena for bank records where records were relevant and proportional and ordering parties to submit a proposed protective order to prevent disclosure).

As for relevance to contract formation, Rocket argues that its four targeted requests seek "documents and information related to subscriber and registration information (Request Nos. 1 and 2), account recovery contacts (Request No. 3), and login and session history (Request No. 4). *See* ECF No. 38-3, PageID.513." (ECF No. 42, PageID.588). The first two categories, it says, will show who

---

Abstain from Reviewing any Materials from Yahoo, Inc. or Bandwidth, Inc. while Plaintiff's Motion is Pending." *See* September 28, 2026 text-only order.

[3] The parties have been unable to agree on the terms of a stipulated order but have been ordered to meet and confer on the issue before the Court rules on Rocket's motion for protective order governing discovery of confidential information. (ECF Nos. 44, 47).

created and controls the Yahoo account at issue and "may also surface alternate phone numbers and email addresses associated with the Subject IP Address or with persons connected to it." (*Id.*, PageID.588-589). The third category—login and session history—will show whether the subject IP address accessed the account around August 11 and whether any other IP addresses that have accessed the account are connected to the person who made the August 11 submission under the name "Testq Testing" using Dobronski's phone number. (*Id.*).

Rocket has agreed to remove its requests that would reveal Dobronski's date of birth or security questions and answers, and has not requested his passwords, password hashes, or reset tokens. Thus, it argues, there is no need for a protective order that further limits its Yahoo discovery.

In reply, Dobronski argues that Rocket's theories behind the discovery requests are not sufficiently relevant to the question at hand. Rocket believes that with the requested information, it may be able to show that accounts, telephone numbers, or IP addresses linked to Dobronski's Yahoo account had access to the IP address used to make the request to Rocket that included the arbitration clause. But Dobronski says that this sounds under the old discovery rules, which permitted discovery of information "reasonably calculated to lead to the discovery of admissible evidence." This rule, of course, has been replaced with one permitting discovery that is relevant to a claim or defense and proportional to the needs of the

case. *See Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273-74 (6th Cir. 2021).

While Rocket is not entitled to conduct a fishing expedition for connections that may exist, the Court recognizes that determining who submitted the request to it with Dobronski's phone number is a difficult task. Dobronski's proposed "focused alternative" request—to determine whether IP address 173.167.231.105 accessed Plaintiff's Yahoo account at or around the time of the August 11 submission—does not entirely answer the question. Although connected accounts would not directly show that someone with authority to act on behalf of Dobronski in fact did so, they would be relevant to Rocket's defense. Such individuals could be easily deposed, which the Court concludes may be one of the only ways for Rocket to determine who actually entered the agreement. Thus, the Court finds that Rocket's Yahoo subpoena should only be limited to the extent Rocket has already agreed to limit it.

B. Bandwidth Subpoena

The Bandwidth subpoena—which concerns a VoIP residential telephone number—defines the relevant period of production as July 1 to September 30, 2025. (ECF No. 38-4, PageID.519). Dobronski again takes issue with the length of the relevant period, as well as the following summarized requests:

> all portal access (No. 1), all call detail records (No. 2), routing and originating-number records (Nos. 3–5), infrastructure and provisioning

> records (Nos. 6–9), all SMS/MMS records (No. 10), full rate and payment records (No. 11), ownership/authorized users (No. 12), and retention policies (No. 13).

(ECF No. 38, PageID.486-487; *see also* ECF No. 38-4).

Rocket has offered to withdraw Request 13 and to limit Request 11 to payor identity. Dobronski says this is insufficient and should be limited to "the account holder (Ex. 3), payor, and authorized users at the relevant time; whether the relevant VoIP account or interface was accessed from the specified IP near August 11; and technical provisioning fields necessary to interpret a matching access." (ECF No. 38, PageID.490). Call details and routing paths, text message metadata, and communication contacts, he argues, are not relevant to who may have possessed actual authority to agree to contract formation.

Unlike the Yahoo information, which may connect the IP address used to enter Rocket's agreement with one or more relevant individuals, the Court struggles to see the relevancy of the Bandwidth VoIP information at this stage. Rocket says that "[e]ach category [of information sought] bears directly on who controlled or had access to the VoIP number at the time of the August 11 submission and whether that person had authority to act on Plaintiff's behalf." (ECF No. 42, PageID.590). But this says nothing about the identity of the individual who appears to have entered, or attempted to enter, into an agreement with Rocket on Dobronski's behalf (which of course may be Dobronski himself).

The ownership and activity of the Bandwidth VoIP is certainly relevant to other issues in this case, but for contract formation, the relevance is limited.[4]

Dobronski consents to discovery from Bandwidth of the account holder, payor, authorized users, and whether the relevant VoIP account or interface was accessed from the specified IP near August 11, 2025. (ECF No. 38, PageID.490). He also agrees that Rocket can discover "technical provisioning fields necessary to interpret a matching access." (*Id.*). The Court agrees with Dobronski that nothing beyond this is warranted. Regarding the timeframe for these requests, production shall be limited to the month of August 2025.

C. Timeliness of Motion

Rocket also argues that Dobronski's motion should be denied as untimely. As it notes, Dobronski filed this motion on September 28, 2026, which was not prior to the return date of the subpoenas to Yahoo or Bandwidth, including the updated Yahoo subpoena, which had a compliance date of September 22. Dobronski does not dispute this timeline but states that his motion was filed only after his objections made directly to Rocket did not result in an agreement of the parties.

---

[4] As the undersigned mentioned in her Report and Recommendation, had Rocket implemented two-factor authentication to verify that the request for information was made by the owner of the phone number entered, this information would be vastly more relevant here. (ECF No. 27, PageID.352).

In support of its argument, Rocket cites *Nationwide Recovery, Inc. v. City of Detroit*, which held in relevant part,

> Rule 45(d)(3)(A) requires the "timely" filing of a motion to quash a subpoena, *see* Fed. R. Civ. P. 45(d)(3)(A), and "[i]t is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena," *FTC v. Trudeau*, No. 5:12MC35, 2012 WL 5463829, at *3 (N.D. Ohio Nov. 8, 2012) (quoting *Estate of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006)). While Rule 26(c) does not expressly state that a motion for protective order must be "timely" filed or filed within some other time frame, courts have found a waiver of discovery objections not raised before the deadline for responding. *See, e.g., Drutis v. Rand McNally & Co.*, 236 F.R.D. 325, 336-37 (E.D. Ky. 2006); *United States v. Thody*, No. 1:19-cv-3392020 13553263, at *1 (W.D. Mich. Sept. 30, 2020) (citing cases).

No. 17-CV-12378, 2024 WL 1283785, at *3 (E.D. Mich. Mar. 26, 2024), *aff'd sub nom. Nationwide Recovery, Inc. v. City of Detroit, Michigan*, 163 F.4th 977 (6th Cir. 2026).[5]

In *Nationwide*, a non-party moved to quash a subpoena directed to him and for a protective order against the subpoena. *Id.* The court found that both bases for the non-party's motion, which was made after the non-party failed to appear at his scheduled deposition, were untimely. In so ruling, the court noted that under Rule 45(d), a motion to quash a subpoena must be made prior to the return date of the subpoena, but that Rule 26(c) did not expressly state that a motion for

---

[5] The Sixth Circuit ruling in this case did not opine on the issue of timeliness of a motion for protective order.

protective order must be "timely." *Id.* However, the court cited *Drutis* and *Thody* for proposition that "courts have found a waiver of discovery objections not raised before the deadline for responding." *Id.* *Drutis* found this to be the case where the plaintiffs submitted untimely responses to the defendants' interrogatories and "did not, at any time prior to the deadline for responding thereto, file a motion for a protective order or seek an extension of time in which to respond." 236 F.R.D. at 337. Similarly, in *Thody*, the defendant waived objections to interrogatories that he was served by failing to timely respond to them, and no mention of protective orders was made. 2020 WL 13553263 at *1.

Here, Dobronski was under no obligation to respond to Rocket's third-party subpoenas at any time under the Rules. This alone distinguishes the present matter from all of the authority above. Further, as noted in *Nationwide*, Rule 26(c) contains no requirement that a motion for protective order be timely or that it be made within a certain period. *Nationwide* nevertheless found that a motion for protective order was untimely, but the authorities it cited did not pertain to motions for protective orders specifically. Thus, the Court finds that Dobronski's motion was not untimely.

If Rule 45 time limits applied to Rule 26(c) motions for a protective order, that would still not be the end of the discussion. "[I]n unusual circumstances and for good cause shown, failure to make a timely objection to a subpoena … will not

bar consideration of the objection." *Halawani v. Wolfenbarger*, No. 07-15483, 2008 WL 5188813, at *4 (E.D. Mich. Dec. 10, 2008) (citing *In re Motorsports Antitrust Litig.,* 186 F.R.D. 344 (W.D. Va. 1999)). Courts generally apply four factors to determine unusual circumstances and good cause: "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for [affected person] and counsel for subpoenaing party were in contact concerning the [affected person's] compliance prior to the time the [affected person] challenged legal basis for the subpoena." *Schnatter v. 247 Grp., LLC*, 343 F.R.D. 325, 330 (W.D. Ky. 2022) (citation omitted).

Here, the Court finds that the factors—although not a perfect fit for the situation at hand—have been met. Dobronski has convinced the Court that the subpoena to Bandwidth was overbroad as it pertains to the limited discovery allowed at this stage; the non-parties have appeared to have acted in good faith and there has been no showing otherwise; and Dobronski was in contact with Rocket regarding the scope of the subpoenas prior to their return dates. Thus, if the same time limit applied to motions for protective order, the Court would find that his objections should nevertheless be considered.

## IV. Conclusion

For the reasons stated above, the Yahoo subpoena shall be limited as described herein (only in the manner previously agreed to by Rocket). The Bandwidth subpoena shall be limited to the following discovery from the month of August 2025: the identity of the account holder, payor, and authorized users; whether the relevant VoIP account or interface was accessed from the specified IP address; and technical provisioning fields necessary to interpret a matching access, as Dobronski has requested. This RESOLVES Dobronski's motion.

SO ORDERED.

Dated: October 19, 2026
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 19, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager